[Coghill v. Kennedy.]

# Coghill v. Kennedy.

*Contest of Will.*

1. *Jurors, challenge for cause on account of bias.*—A juror in a civil case, having a fixed opinion in reference to the matter in issue which would bias his verdict, is disqualified by statute, and upon the principles of the common law; but the mere formation and expression of an opinion is not disqualifying. A party cannot challenge for cause unless the disqualifying opinion is affirmatively shown to be opposed to the party challenging.

2. *Undue influence, by whom may be exercised, when entire will invalid.*—The undue influence which will invalidate a will need not be exercised by all the beneficiaries, nor by any of them; if fraud or undue influence affects the whole will, though exercised by one only of the beneficiaries, or by one not named therein, no part of it can stand.

3. *Plea of undue influence, when sufficient.*—A plea averring that the deceased at the time of the making of the will was under the domination and control of certain named persons, or some of them, and that the will is the result and product of the undue influence exercised by them, or some of them, over the mind of deceased, and was not the result of the exercise of her free volition, is sufficient, without stating the means by which the influence was acquired, and the manner in which it was exercised, since these facts are usually within the knowledge alone of those who are most interested in withholding them.

4. *Confidential relations, may be proved under plea of undue influence.*—Proof of the existence of confidential relations between a testator and beneficiaries under the will may be made under a proper plea of undue influence, although there is no averment in the plea of the existence of such relations.

5. *Fraud or deceit and undue influence, distinguished.*—Undue influence is itself fraud, or a species of fraud, and any plea which shows the exercise of undue influence necessarily shows fraud; a plea of undue influence need not aver fraud or deceit.

6. *Facts tending to show undue influence.*—Where the evidence tended to show the feeble physical condition of testatrix, her previous intention, expressed two or three weeks before the will was signed, to make a disposition of her property different from that made by the will, that three days before the execution of the will, the proponent persuaded and induced the deceased's husband, who was of weak mind, to convey

*41*

[Coghill v. Kennedy.]

valuable property to the deceased, although she was at the time confined to her bed with a disease known to be fatal, the execution of the will without the knowledge of the husband and near relatives, the keeping of its execution secret, and subsequent denial and withholding of its contents, the exclusion of the friends and relatives of deceased from her bedside, while the beneficiaries, strangers to her blood, were freely admitted, the previous dislike entertained by deceased towards the executor named in the will, and his activity in and about the preparation and execution of the will—all of which facts are admissible—it was sufficient to authorize the submission of the question of undue influence to the jury, whether confidential relations between the deceased and those participating in the preparation and execution of the will are shown or not.

7. *Confidential relations defined; burden of proof.*—The rule, that the existence of confidential relations between a testator and a principal or large beneficiary, coupled with activity on the part of the latter in the preparation and execution of the will, casts upon him the burden of showing that the will was not induced by coercion or fraud, embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another; it may be stated generally that the relation exists whenever confidence is reposed and accepted, and the one has it in his power, in a secret manner, for his own advantage, to sacrifice those interests of the other which he is bound in honor and good conscience to protect.

8. *Undue influence a question for the jury, when any evidence of confidential relations, etc.*—If there is any evidence tending to show the existence of confidential relations toward the deceased on the part of a large beneficiary, and activity on his part in and about the preparation and execution of the will, it is the duty of the court to submit to the jury the question of their existence as a fact, which involves the submission of the question of undue influence, since, if such relations and activity be found to exist in fact, the law presumes undue influence, and casts upon the beneficiary the burden of rebutting the presumption.

9. *Confidential relations between nurse and patient.*—Confidential relations may exist between a patient, who is confined to her bed with a fatal disease, and her nurse, who has entire charge of her sick room and person, as they may exist between a medical adviser and patient.

10. *Active participation by one, and confidential relations by another, having a common purpose, raises presumption.*—If the members of a family have a common scheme or purpose to induce a person to execute a will in favor of any members of

the family, one of whom occupies confidential relations to the deceased, and another. in the execution of the common purpose, actively participates in the preparation and execution of the will, the legal presumption arising from these facts will cast upon each beneficiary the burden of showing the absence of undue influence.

11. *Objection to evidence as illegal.*—An objection that evidence is illegal, is general, and does not raise the point that it is a mere conclusion.

12. *Overruling motion to exclude question and answer, when not error.*—If a question calls for and elicits legal and illegal testimony, it is not error to overrule a motion to exclude both question and answer, although separate exceptions are reserved.

13. *Declarations of deceased, prior and subsequent, for what purpose admissible.*—Inasmuch as the mental condition of a person can be determined only by his acts and declarations these are admissible on the issue of undue influence, whether made a reasonable time before or after the execution of the will, to establish everything relating to the testator, himself, his memory, intentions, idiosyncrasies, prejudices, affections, relations with and feelings towards the beneficiaries and all those who. if he died intestate. would have shared in the estate, and towards those charged with undue influence; but subsequent declarations, not part of the *res gestœ*, are not admissible to establish acts of undue influence.

14. *Declarations of conspirator.*—Where there is evidence to show a common purpose to procure the execution of the will, the declarations of one of the parties, after its execution, but before probate, are admissible when tending to show an effort to carry out the common purpose, including the probate of the will.

15. *Legal presumption of undue influence does not arise in the absence of confidence and trust.*—The existence of a relation which merely gives one the power to unduly influence another in the execution of his will, unaccompanied by any element of confidence or trust reposed, even though there is the necessary activity in and about the preparation and execution of the will, does not raise the legal presumption of undue influence.

16. *Facts which authorize the inference of confidential relations. etc., do not raise a legal presumption.*—A charge instructing the jury that "the presumption of undue influence does arise" if there existed "certain relations between the testator and the beneficiaries well calculated to give them an undue influence over him," together with certain acts of participation in the preparation and execution of the will. and other acts from which the jury might infer confidential relations,

does not sufficiently state the existence of confidential rela-
tions, and is erroneous.

17. *Measure of proof; "satisfy."*—The true measure of proof to jus-
tify a verdict in a civil case, even where a legal presumption
is to be overcome, is that it shall reasonably satisfy or con-
vince the jury. A charge requiring the evidence to "satisfy
the jury" is erroneous.

18. *Undue influence over weak mind.*—Although the influence ex-
erted over the testator was such as, if applied under ordinary
circumstances, or exercised over persons of ordinary powers
of resistance, would be regarded as innocent, yet if in the par-
ticular case it resulted in a disposition of property contrary
to the testator's desire, it is undue influence.

19. *Mental coercion; importunity, etc.*—Whether the free agency of
the testator is destroyed or mastered by physical force or
mental coercion, by threats which create fear, or by im-
portunity which the testator is too weak to resist, or which
extorts compliance in the hope of peace, is immaterial. When-
ever through weakness, ignorance, dependence or implicit re-
liance of one on the good faith of another the latter obtains
an ascendency which prevents the former from exercising an
unbiased judgment, undue influence exists.

APPEAL from Montgomery Probate Court.

Tried before Hon. J. B. GASTON.

The grounds of contest, with the questions raised by
demurrer thereto, and rulings of the court upon the
evidence, are stated in the opinion. By the two instru-
ments offered for probate as the will of Leonora Ken-
nedy, deceased, she gave the life interest in all her prop-
erty, except her dwelling house, to her husband, A. M.
Kennedy, the contestant here. The house she gave to
Maggie Coghill upon condition that she furnish a home
therein for A. M. Kennedy and Amelia Kershaw. After
the death of A. M. Kennedy, the will provided an annuity
of twenty-five dollars per month for said Amelia. By
the will she made specific bequests as follows:    One
thousand dollars to her nephew, Andie Beaver; five hun-
dred dollars to the First Presbyterian Church of Mont-
gomery; one hundred dollars to the Woman's Home of
Montgomery; one hundred dollars each to Mrs. Henry
Booth and Mrs. Kate Joseph; five hundred dollars to
John Haardt, and an annuity of five dollars per month to
her servant, Mat Clark. After all these specific bequests
and annuities are paid and Amelia Kershaw and Mat
Clark shall have died and the funeral expenses of the

said Amelia shall have been paid, the remainder of the estate of testatrix is bequeathed to Isabella Coghill, sister of said William and Maggie. William Coghill received no bequest by the will, but was made executor without bond. The codicil recites that testatrix since the making of her will has come into possession of a certain storehouse and lot, and said codicil relates exclusively to that storehouse and lot. It is provided thereby that the proceeds shall go to A. M. Kennedy for life; that after said A. M. Kennedy's death, William Coghill shall enjoy the rents and profits thereof for life without power of alienation, subject to two charges, a payment of fifty dollars per year each to the First Presbyterian Church of Montgomery and the Presbyterian Orphans' Home at Talladega. After the death of William Coghill, said property is to go to Mary Ann Coghill, the mother of said William, and his three sisters, Maggie, Isabella and Lily, subject to the charges specified above. After the death of all these persons said property is to go to their heirs, relieved of any charge.

Against the objection and exception of the proponent, the contestants were allowed to introduce in evidence the will of A. M. Kennedy, the husband of the testatrix. By the first item of said will, the said A. M. Kennedy bequeaths to his son, Joseph M. Kennedy, certain described property. The second item was as follows: "Having provided for my wife, Leonora Kennedy, by giving to her, by deed and otherwise, property sufficient for her maintenance and support, I make no other provision for her in this will, except that I give and bequeath to her the furniture of all kinds and descriptions in our present residence at number 217 Clayton street." The third item was for legacies and bequests to certain named parties in no way connected with the present suit. By the fourth item of the will he gives to Miss Lily Coghill his watch and chain. The fifth item is a bequest to Mrs. Amelia Kershaw of the house and lot in Elmore county. The sixth item is in reference to making such improvements on his burial lot as are necessary to carry out the wishes of his wife. In the seventh item there was created a trusteeship in certain property for two children of his son, Joseph Kennedy. In the eighth item he appoints William W. Coghill, F. M. Billing and Joseph Kennedy as his executors without bond.

In his general charge, the court, among other things, instructed the jury as follows: "The existence of con-fidential relations between the testator and principal or large beneficiaries under the will, coupled with activity on the part of the latter, in and about the execution and preparation of the will, such as initiation of proceedings for the preparation of the will or participation in such preparation, employing the draughtsman, selecting the witnesses, excluding persons from the testator at or about the time of the execution of the will, concealing the making of the will after it was made, and the like, will raise a presumption of undue influence, and cast on them the burden of showing that it was not induced by co-ercion or fraud on their part, directly or indirectly."

At the request of the contestants, the court gave to the jury, among others, the following written charges: (a.) "It is not necessary that there should be confiden-tial relations between all the beneficiaries and the testator. If there is such relation with one of a family and the will is found to have been procured through his undue influence, it operates against all the family." (e.) "It is not the means employed so much as the effect produced which must be considered in determining whether undue influence has contributed to the making of a will, for though the influence exerted over the testator was such as, if applied under ordinary circum-stances, or exercised over persons of ordinary powers of resistance, would be regarded as innocent, yet if in the particular case it resulted in a disposition of prop-erty contrary to the testator's desire, the influence was undue." (h.) "Whether the free agency of the testator is destroyed or mastered by physical force or mental co-ercion, by threats which occasion fear, or by importunity which the testator is too weak to resist, or which extorts compliance in the hope of peace, is immaterial. In con-sidering the question, therefore, it is essential to ascer-tain, as far as practicable, the power of coercion upon the one hand and the liability to its influence on the other. And whenever, through weakness, ignorance, dependence or implicit reliance of one on the good faith of another, the latter obtains an ascendancy which prevents the former from exercising an unbiased judgment, undue influence exists." (k.) "If a testator is given a false impression concerning persons who are the natural ob-

[Coghill v. Kennedy]

jects of his bounty so that when he comes to make his will he acts upon unfounded beliefs and gives or withholds his bounty in a manner entirely different from what his action would have been had it not been based on false beliefs and opinions deliberately instilled into his mind for the purpose of influencing his will—and if in such case the testator is not in position, from any cause, as sickness, age, debility, concealment of the true facts, or other reason, to judge for himself and to deliberate or resist the influences, and the will is the result of them, it is invalid from undue influence." (1.) "While the burden of proving the will to be the product of undue influence rests upon those alleging it, and though when the testator is shown to have been of sound mind, there is no presumption of undue influence from the mere fact that the will is unreasonable and unjust, and that there was interest and opportunity to make use of undue influence, still, when the evidence shows certain relations between the testator and the beneficiaries well calculated to give them an undue influence over him, and that his condition of mind and body was such as to make it probable that he was not able to resist the influence of others, and that the provisions of the will are unnatural and unreasonable and contrary to previously expressed intentions, and when the evidence further shows that the beneficiaries are strangers to the blood, that they had possesion of the person of the testator, who was in a condition of weakness and sickness, that they were active in procuring the will, that they furnished instructions for the draughtsman, and appointed him, summoned witnesses and were present at the execution in the absence and without the knowledge of the relatives, and that concealment was resorted to, and that the relatives and friends of the deceased were denied or excluded from his society with the view of acquiring and maintaining influence over him, the presumption of undue influence does arise, and it is incumbent upon the proponent to satisfy the jury that the will expresses the free and intelligent wishes of the testator." To the giving of each of the several written charges requested by the contestants the proponent separately excepted, and also separately excepted to the court's refusal to give the following charges requested by him: (1.) "If the jury believes the evidence in this case, they must find the issues in

favor of the proponent." (2.) "Under the evidence in this case, the jury must find a verdict for the proponent on the issue of unsoundness of mind of Mrs. Kennedy." (3.) "There is no evidence in this case which would authorize the jury to find that fraud or deceit was practiced upon Mrs. Kennedy by any of the beneficiaries under the will and codicil offered for probate." (4.) "There is no evidence in this case which would authorize the jury to find that any of the beneficiaries under the will or codicil offered for probate used any coercion to procure Mrs. Kennedy to sign the same." (5.) "The evidence in this case does not show that any confidential relations existed between the testatrix and any of the Coghill family." (6.) "Under the evidence in this case there were no confidential relations existing between Mrs. Kennedy and William Coghill." (7.) "There is no evidence in this case as to confidential relations between Leonora Kennedy and Maggie Coghill." (8.) "It is not undue influence for a person by forethought or affectionate attention for the wants of another to acquire the confidence of that other and a controlling influence over him; and even should the jury believe that any of the beneficiaries under the will offered for probate had acquired a controlling influence over the testatrix, yet, if that influence was acquired by forethought, affectionate care and attention to the testatrix, that would not authorize the jury to find that the will was the product of undue influence. Before the jury can find that the will was the product of undue influence, the evidence must satisfy their minds that the execution of the same was procured by fraud or deceit or coercion of the will of the testatrix other than the control over that will acquired by kindness, affectionate care and attention." (9.) "If the jury believe from the evidence that on or about the 1st day of December, 1894, Mrs. Kennedy, the testatrix, called for William Coghill, the proponent, and in her presence, and at her request, that he made a memorandum of the disposition which she desired to make of her property by her last will and testament; that said Coghill carried such memorandum to Ray Rushton, Esq., an attorney at law, and handed the same to him for the purpose of preparing the will, that said Rushton, on the same day that he received the memorandum, visited Mrs. Kennedy and went over with her, while he and she were

alone, each item of the memorandum, and that she stated
that that was the disposition which she wished to make
of her property, with some slight changes which were
made in the memorandum, and that he, from it, prepared
the original will given in evidence in this case; that on
the next day he carried the said will to Mrs. Kennedy
and read it over in her presence; that thereupon she
signed the same, and the witnesses' names which were
thereto signed were thereto signed in her presence, then
as to the original will, the jury must find the issues in
favor of the proponent, unless the evidence satisfies the
minds of the jury that she was induced to sign such will
by some fraud or deceit practiced upon her by some of
the beneficiaries thereunder, or by the coercion of her
will by some of such beneficiaries, and the evidence of
such fraud or deceit or coercion must be sufficient to
satisfy the minds of the jury that at the time she exe-
cuted the will she was controlled by such fraud or deceit
or such coercion and thereby compelled to sign a will
which she would not have signed but for such fraud, or
deceit or coercion." (10.) "There is no evidence in this
case of any conspiracy between the various members of
the Coghill family to procure Mrs. Kennedy to execute
a will other than the one she desired to execute." (11.)
"There is no evidence in this case that Miss Bella Cog-
hill, one of the beneficiaries under the will offered for
probate, used any fraud or deceit or exercised any coer-
cion to induce Mrs. Kennedy to execute either the orig-
inal will or codicil offered for probate in this case, and
as to her the jury is not authorized to set aside such will
or codicil." (12.) "There is no evidence in this case that
Miss Maggie Coghill, one of the beneficiaries under the
will offered for probate, used any fraud or deceit or exer-
cised any coercion to induce Mrs. Kennedy to execute
either the original will or codicil offered to probate in
this case, and as to her the jury is not authorized to set
aside such will or codicil." (13.) "There is no evidence
in this case that Mrs. Mary Ann Coghill, one of the bene-
ficiaries under the will offered for probate, used any
fraud or exercised any coercion to induce Mrs. Kennedy
to execute either the original will or codicil offered for
probate in this case, and as to her the jury is not author-
ized to set aside such will or codicil." (14.) "There is no
evidence in this case that Miss Lily Coghill, one of the

beneficiaries under the will offered to probate, used any fraud or deceit or exercised any coercion to induce Mrs. Kennedy to execute either the original will or codicil offered for probate in this case, and as to her, the jury is not authorized to set aside such will or codicil." (15.) "There is no evidence in this case that William Coghill, one of the beneficiaries under the will offered for probate, used any fraud or deceit or exercised any coercion to induce Mrs. Kennedy to execute either the original will or codicil offered for probate in this case, and as to him, the jury is not authorized to set aside such will or codicil." (16.) "In determining whether the proponent in this case, or any of the beneficiaries under the will, induced the execution of the same by undue influence, the jury cannot consider the state of mind of contestant A. M. Kennedy." (17.) "Although the jury might believe from the evidence that the contestant, A. M. Kennedy was of a weak mind at the time of the execution of the will and codicil given in evidence, and at the time of the execution by him of the deed to his wife, the jury can not consider that fact in determining whether the execution of such will and codicil were procured by undue influence." (18.) "If the jury believe from the evidence that Mrs. Kennedy, the testatrix, requested William Coghill, the proponent, in the month of January, 1895, to send the witness, Rushton, to her with the will which she had signed the December preceding; that said Coghill delivered said message; that thereupon the said Rushton procured the said will and carried it to testatrix; that she, thereupon, while in the presence of said Rushton, alone, directed him to draw up a codicil to her will disposing of the storehouse and lot on Commerce street in the manner in which it is disposed of by said codicil; that said Rushton, after receiving such instructions, went to his office and prepared said codicil given in evidence; that some time thereafter he carried the same to the testatrix and read it over to her; that she, thereupon, did sign the same, and it was attested by the persons whose names appear thereto as witnesses in her presence; then the jury must find the issue in favor of the proponent and admit such codicil to probate, unless the evidence satisfies the minds of the jury that the testatrix was induced at the time she signed said will to sign the same by some fraud or deceit practiced upon her by the

beneficiaries under the said codicil, or by some of them; or, unless the jury are satisfied from the evidence that she was induced to sign the said codicil at the time she signed it by some coercion exercised over her by said beneficiaries or some of them." (19.) "The law presumes every person to be of sound mind and disposing memory, and unless the evidence satisfies the jury that Mrs. Kennedy, the testatrix, was not of sound mind and disposing memory at the time she executed the instrument offered for probate, then the jury must find a verdict for the proponent on this issue." (20.) "If the jury believe from the evidence that the only relatives of the testatrix, for which no provision is made in her will were her nephews and nieces, the Thompsons, living in Augusta, Georgia, and certain nephews and nieces residing in North and South Carolina and Mississippi, with whom she had had little or no intercourse for a long period of time; and if they further believe that said Thompsons were people of independent means, then the fact that no provision was made for them in the will is not a circumstance to be considered by the jury as evidence that the execution of said will was procured by the exercise of undue influence." (21.) "Undue influence to justify the jury in finding a verdict against the probate of the will must have operated upon the mind of the person executing the will at the very time at which the same was signed by her or him; although the jury may believe that the beneficiaries under the will now offered for probate or some of them exercised undue influence over the testatrix, Mrs. Kennedy, unless they are satisfied from the evidence that it operated on her mind at the time she signed said will and codicil, and controlled her in signing such will and codicil, then the jury must find a verdict for the proponent on the issue of undue influence."

The jury returned a verdict for the contestants, and thereupon the judgment was entered, that the petition filed for the probate of said paper purporting to be the last will and testament of Leonora Kennedy, deceased, be denied, and that said instrument so propounded for probate be declared not the true and last will and testament of said Leonora Kennedy, deceased. From this judgment the proponent appeals, and assigns as error

the several rulings of the trial court to which exceptions were reserved.

TOMPKINS & TROY, for appellant.—Challenges for cause are not confined to those causes enumerated in the statute.—*Smith's Case,* 55 Ala. 1; *Mason v. State,* 15 Texas Ap. 534. Facts and not conclusions of the pleader must be stated in pleas of fraud and undue influence in cases of this kind as well as others.—*Jackson v. Rowell,* 87 Ala. 690; *Montgomery v. Foster,* 91 Ala. 613; South-erland Stat. Con. p. 412. A plea alleging in the alterna-tive that some or all of certain named beneficiaries used undue influence in procuring the execution of the will, is defective under the rules that a will may be valid in part and invalid in part; good as to some beneficiaries, and bad as to others.—*Florey v. Florey,* 24 Ala. 248; *Hall v. Hall,* 38 Ala. 131; *Lyons v. Campbell,* 88 Ala. 462; *Eastis v. Montgomery;* 93 Ala. 293, 299; *Henry v. Hall,* 17 So. 187, 191. Testamentary capacity and undue influence cannot both arise in the same case.—*Burney v. Torrey,* 100 Ala. 157. The strongest legitimate inference of fact to be drawn from contestant's evidence, is that by affec-tionate care and attention the beneficiaries ingratiated themselves into the good graces of the testatrix. There is not even evidence of solicitation, suggestion, or argu-ment addressed to the testatrix by the beneficiaries, although even these would be perfectly legitimate.—*Bur-ney v. Torrey,* 100 Ala. 168; *Lyons v. Campbell,* 88 Ala. 470; *Eastis v. Montgomery,* 93 Ala. 300; *Leeper v. Tay-lor,* 47 Ala. 222; *Taylor v. Kelly,* 31 Ala. 70; *Gilbert v. Gilbert,* 22 Ala. 529; *Daniel v. Hill,* 52 Ala. 430. The facts do not bring this case within the principle declared in *Bancroft v. Otis,* 91 Ala. 279. See also, 27 Am. & Eng. Encyc. of Law, 508, 516; *Chandler v. Jost,* 96 Ala. 596, 607. As to what constitutes undue influence, see also, 2 Brick. Dig. 540, §§228, 230; 3 Brick. Dig. 819, §§22, 23; Atkinson's Compilation, 187, *et seq.;* So Rep. Dig. 2362; 1 Jarman on Wills (6th Am. Ed.), 66 *et seq.;* 27 Am. & Eng. Encyc. of Law, 495; *Bulger v. Ross,* 98 Ala. 267; *Knox v. Knox,* 95 Ala. 495, 503; *Moore v. Spier,* 80 Ala. 133; *Poole v. Poole,* 35 Ala. 12; *Johnson v. Armstrong,* 97 Ala. 731; *Blakey v. Blakey,* 33 Ala. 615; *Hall v. Hall,* 38 Ala. 131, 134; *Stubbs v. Houston,* 33 Ala. 555; *Mosser v. Mosser,* 32 Ala. 551; *Snyder v.*

[Coghill v. Kennedy.]

*Brooks,* 84 Ala. 58; *Bunyard v. McElroy,* 21 Ala. 311, 316; *Garrett v. Heflin,* 98 Ala. 615; *Seal v. Chambliss,* 35 Ala. 19.

W. A. GUNTER and GRAHAM & STEINER, *contra.*—The plea of undue influence is, as to the instrument, a plea *non est factum,* and as to the party executing it, an allegation of duress over the testator's mind by the parties named, which is entirely sufficient, without stating the facts which are generally unknown in detail until the trial is had.—*Bancroft v. Otis,* 91 Ala. 280; *Stubbs v. Houston,* 33 Ala. 555; *Johnson v. Armstrong,* 97 Ala. 731; *Moore v. Spier,* 80 Ala. 129; *Eastis v. Montgomery,* 93 Ala. 293; *Lyons v. Campbell,* 88 Ala. 469. The declarations of the deceased were admissible to show the condition of her mind. *In re Hess' Will,* 31 Am. St. Rep. 690. Undue influence is any influence which the testator is not strong enough to resist, and which is used on him, and in effect substitutes the will of another for his own.—2 Leading Cases in Eq. 1265, 1280; *Chappell v. Trent,* 19 S. E. 314; Notes in *Hess' Will,* 31 Am. St. Rep. 671. For distinction between fraud or deceit and undue influence, see, *Higginbotham v. Higginbotham,* 17 So. 516; *Henry v. Hall,* 17 So. 187.

BRICKELL, C. J.—The appellant, in the capacity of executor, propounded for probate two instruments in writing; the one purporting to be the last will and testament, and the other a codicil thereto, of Leonora Kennedy, deceased. The validity of the writings was contested by the husband and a sister of the deceased, one of her next of kin. The assignments of error are numerous, and we propose to consider them in the order in which they have been argued by counsel.

A jury having been summoned to try the issue joined between the parties, in the course of its organization five of the persons summoned, in response to questions asked by the proponent, stated that they had expressed an opinion as to the validity of the will, and were challenged for cause by the proponent. The court then inquired of each of the first four challenged if he had formed an opinion that would bias his verdict, and if he was open to conviction. The first question having been answered negatively, and the latter affirmatively, the

challenge was overruled, and they were put upon the proponent for peremptory challenge. The fifth, on inquiry of the proponent, stated that he had expressed an opinion as to the validity of the will, and was challenged for cause, and the challenge overruled. The court, in these rulings, was not in error. The Civil Code, with a single exception, incorporated in the Code of 1896 as subdivision 11 of section 5016 of the Criminal Code, does not declare or define the constituents of a challenge of a juror for cause. There is no more than the general provision that in civil cases jurors are drawn, summoned, impanneled, and sworn as directed by the provisions of the Criminal Code.—Code, 1886, §2750; Code, 1896, §2654. The practical construction has been that whatever are the disqualifications of jurors prescribed by the Criminal Code, not by their terms applicable to criminal cases only, are disqualifications in civil cases. A juror, having a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict, is disqualified by the Criminal Code.—Cr. Code, 1896, §5016, subd. 7. And a juror in a civil case, having such an opinion in reference to the matter in issue, is disqualified by the statute, and upon the principles of the common law.—1 Thom. Trials, §§71-88. The mere formation and expression of an opinion is not disqualifying. There must be in it the element of positiveness which would control the juror in the jury box.—*Bales' Case*, 63 Ala. 30; *Carson's Case*, 50 Ala. 134; *Hammil's Case*, 90 Ala. 577. Nor is the formation or expression of an opinion, though the opinion is so positive as to constitute challenge for cause, unless the juror is prejudiced against the party challenging. As to the direction of the opinion—whether it was favorable or unfavorable to the will—the jurors were not interrogated by the proponent, and he was not in condition to interpose a challenge for cause.—1 Thomp. Trials, §71.

The mode of contestation of the probate of a will before the court of probate is prescribed by the statute. Code, 1886, §1989; Code, 1896, §4287. The contestant must file "allegations in writing that the will was not duly executed, or of the unsoundness of mind of the testator, or of any other valid objection thereto; and thereupon an issue must be made up, under the direction of the court, between the person making the application as

plaintiff, and the person contesting the validity of the will as defendant; and such issue must on application of either party be tried by a jury." The rulings of the court touching the paper purporting to be a notice of contest, it is unnecessary to consider, as they could not have been harmful to either party, and proper pleading was subsequently filed, upon which issues were formed under the direction of the court; and it was upon these issues the trial was had, and the verdict rendered. We do not regard the demurrer to the third and fourth pleas, or specifications of grounds of contest, as well taken. They allege undue influence exercised over the mind of the testatrix by the proponent, or other members of his family. In addition to the facts averred in the third, the fourth avers the existence of confidential relations between Maggie Coghill and the deceased, together with activity and participation on her part, and by other members of the family, in and about the preparation and execution of the will. The undue influence which will invalidate a will need not be exercised by all the beneficiaries, nor by any of them. If fraud or undue influence affects the whole will, though exercised by one only of the beneficiaries, or by one not named therein, no part of it can stand.—*Florey's Ex'rs v. Florey*, 24 Ala. 248.

It is, therefore, no objection to a plea that it attacks the whole will, and charges the exercise of undue influence by one only of the beneficiaries. Nor are the pleas objectionable on the ground that they state mere legal conclusions, and do not aver facts constituting undue influence. The third plea charges that the deceased at the time of the making of the will was under the domination and control of certain named members of the Coghill family, or some of them, and that the will is the result and product of the undue influence exercised by them, or some of them, over the mind of the deceased, and was not the result of the exercise of her free volition. This must be treated as equivalent to an averment that the persons named, or some of them, acquired a dominating influence over the mind of the deceased, which destroyed her free agency, and constrained her to execute the instrument against her will; and, thus treated, it is sufficient. To require the contestant to state in the plea the means by which the influence was acquired, and the manner in which it was exercised, would be to require

that which, in the great majority of cases, is impossible, since the knowledge of these facts rests entirely in those who are most interested in withholding it. The fourth plea, after reciting the weak mental and physical condition of the deceased, caused by sickness which confined her to bed, and the fact that Maggie Coghill, who had been engaged as nurse, assumed and exercised the entire control and management of the sick room and person of deceased, alleged that the said Maggie Coghill and the proponent, with other members of the family, all of whom were strangers to the blood of testatrix, conceived the scheme and entered into a conspiracy to take advantage of the feebleness of the deceased and to overcome her will power, and induce her by means of their relation of confidence and otherwise to execute the instrument offered for probate, and that they carried out this conspiracy in manner and form as follows, viz: They excluded the relatives and friends of deceased from her room and society, while the entire Coghill family were freely admitted to her presence and were constantly with her; they procured the execution of the will without the knowledge of any of her family or relatives, although her husband and sister were living in the same house with her; they furnished instructions for the drawing of the will, employed the lawyer to draw it, procured the witnesses, had it executed secretly, and retained its custody after execution; "and that said will was executed by said deceased while she was under the undue and fraudulent influence of the said Coghill family, and in their presence, or of some of them, without any competent and independent advice, and is wholly the result of such influence and fraud." We are of opinion that this is a sufficient plea of undue influence, without reference to any presumption arising from the confidential relations supposed to have existed between Maggie Coghill and the deceased, and activity in and about the preparation and execution of the will. We need not decide whether the facts averred are sufficient to show the existence of such relations. Proof of the existence of confidential relations between a testator and beneficiaries under the will may be made under a proper plea of undue influence, although there is no averment in the plea of the existence of such relations. The existence of these relations does not, of itself, constitute any defense to the probate

of the will, but merely changes the burden of proof, when coupled with activity in and about the preparation or execution of the will. Under the third plea, evidence was admissible to prove every fact averred in the fourth, and hence, even though the fourth plea were defective, the overruling of the demurrer would have been error without injury. It is objected that the plea does not show any fraud or deceit was practiced upon the deceased. Undue influence is itself fraud, or a species of fraud, and any plea which shows the exercise of undue influence necessarily shows fraud. Deceit is the use of any trick, false statement, secret device, or false pretense to defraud another; and it is clear that undue influence may be exercised without the use of any of these means,—for example, through the imposition of fear, or constant importunity, to which the testator yields from a desire for peace. It was not necessary to aver that fraud or deceit was practiced upon the testatrix.

It is earnestly contended by counsel for appellant that there is no evidence of undue influence in the record, and that the trial court erred in its refusal to give the general charge in favor of the proponent on this issue. The argument in support of this contention is directed rather to the weight that should be accorded to the evidence in the record, and this was a question to be determined solely by the jury. If there was any evidence in the case, the tendency of or just inference from which was that undue influence had been exercised, it was proper to submit the issue to the jury. The physical condition of the testatrix, her previous intention, expressed two or three weeks before the will was signed, to make a disposition of her property different from that made by the will, in which none of the Coghills were to share, except Maggie, and she to an extent much less than the will provides; the fact that three days before the execution of the will she had no property which she could dispose of by will, except a few shares of stock, and that the proponent endeavored to pursuade, and succeeding in pursuading, the deceased's husband, who was of weak mind, to transfer to her a large amount of property, although she was at the time confined to her bed with cancer of the womb, a disease which was known to be fatal; the impaired mental condition of the husband, rendering him

42

incompetent to transact business, and the effort to induce the sister of testatrix to leave the house; the execution of the will without the knowledge of the husband and sister and other relatives, and the keeping its execution a secret from them, and, when its execution finally became known to them through the testatrix herself, the denial and withholding of all knowledge of its contents; the exclusion of the friends and relatives of the deceased from her bedside, while all the members of the Coghill family were freely admitted; the fact that the latter were strangers to her blood, and the previous dislike entertained by testatrix for the proponent, and the latter's activity in and about the preparation and execution of the will,—all these and many other facts are to be found in the tendencies of the evidence. However cogent may have been the evidence offered by the proponent in rebuttal of these tendencies, it could not operate to withdraw their consideration from the jury. We have examined all the evidence very carefully, and without discussing it here in detail, we are convinced that it was sufficient to justify the submission of this issue to the jury, even if there had been no evidence tending to show the existence of confidential relations between the testatrix and Maggie Coghill or the proponent, and activity on their part in and about the preparation or execution of the will. To authorize the application of the doctrine declared in *Bancroft v. Otis*, 91 Ala. 291, and followed in many subsequent cases, that the existence of confidential relations between a testator and a principal or large beneficiary, coupled with activity on the part of the latter in and about the preparation or execution of the will, casts upon him the burden of showing that the will was not induced by coercion or fraud, directly or indirectly, it is not necessary that the relation be that technical fiduciary relation imposed by law upon persons standing in peculiar positions of trust, such as guardian and ward, trustee and *cestui que trust*, attorney and client, parent and child, and the like. There are many other persons standing in confidential relations in which the principle applies; and it may be stated generally that the relation exists wherever confidence is reposed and accepted, and the one has it in his power, in a secret manner, for his own advantage, to sacrifice those interests of the other which he is bound in honor and good con-

science to protect.—1 Story, Eq. Jur. §323.   The rule
embraces both technical fiduciary relations and those in-
formal relations which exist whenever one man trusts in
and relies upon another.   If there is any evidence tend-
ing to show the existence of such relations on the part
of a large beneficiary, and activity on his part in and
about the preparation or execution of the will, it is the
duty of the court to submit to the jury the ascertain-
ment of their existence as a fact; and this necessarily in-
volves the submission of the issue of undue influence,
since, if it is found as a fact that there did exist such re-
lations and activity, the law will presume the exercise of
undue influence, and cast upon the beneficiary the bur-
den of rebutting the presumption.   We do not doubt
that such relations may exist between a patient, who is
confined to her bed with a fatal disease, and her nurse,
who has entire charge of her sick room and person, as
they may exist between a medical adviser and his
patient; and we think the evidence in this case, to-
gether with the just and reasonable inferences to be
drawn from it, was sufficient to justify the court in sub-
mitting to the jury the ascertainment of the fact of the
existence of confidential relations between Maggie Cog-
hill and the testatrix.   There is also evidence tending to
show that the proponent, a brother of the nurse, occu-
pied such relations, and was active in and about the pre-
paration and execution of the will.   It is shown by his
own testimony that the testatrix believed she had no
one other than himself to depend on.   The contention of
counsel that this activity, in order to create the legal pre-
sumption against the validity of the will when coupled
with confidential relations, must be on the part of the
person who occupies such relations, or of a beneficiary,
cannot be sustained.   In the case of *Henry v. Hall*, 106
Ala. 95, we decided that where there was a devise to the
wife of one between whom and the testator there existed
such relations, and who was active in and about the pre-
paration and execution of the will, these facts brought
the devise to the wife under the influence of this princi-
ple, and cast upon her the burden of showing that it was
not induced by coercion or fraud.   And we regard it as
a legitimate application of the doctrine, resulting from
the reason upon which it is founded, that if the members
of the family have a common scheme or purpose to in-

duce a person to execute a will in favor of any members of the family, one of whom occupies these confidential relations, and another, in the execution of the common purpose, actively participates in the execution of the will, by which legacies are given to various members of the family, the legal presumption arising from these facts will cast upon each of these beneficiaries the burden of showing the absence of undue influence. We do not decide, however, that the existence of such relations between one member of the family and the testator, together with the necessary activity on his part, without any evidence of conspiracy or common purpose, will necessarily raise a presumption against the validity of benefits given by the will to all the other members of the family.

We will next consider some of the many exceptions to the rulings of the trial court on the objections to the admission of evidence. The inquiries opened up by the issue of undue influence are always difficult of solution, because of the secrecy with which the acts constituting the undue influence are committed, and the evidence admissible under the issue covers a wider field than usual in ordinary litigation. While the investigation is directed to the particular time at which the will was executed, yet evidence of facts preceding and subsequent to that particular time is often competent and admissible. *Chandler v. Jost,* 96 Ala. 602; *Kramer v. Weinert,* 81 Ala. 415. Like fraud, it is rarely susceptible of proof, "except by a comprehensive and comparative view of the actions of the party to whom the fraud is imputed, and his relative position a reasonable time before, at, and a reasonable time after, the time at which the act of fraud is alleged to have been committed."—*Snodgrass v. Bank,* 25 Ala. 174.

The will was signed December 3, 1894. The evidence tends to show that prior to December 1st the testatrix had no property which she could dispose of by will, except a few shares of stock, but that her husband, A. M. Kennedy, possessed real and personal property of considerable value. The theory of the contestants was that the proponent and his family, in the execution of a common purpose to obtain a part of this property, knowing their power over the testatrix, first induced the husband to transfer valuable property to the testatrix, and then,

by the exercise of undue influence, constrained the latter to execute the will by which the property was devised to them. In support of this theory, which was certainly a legitimate one upon which to try the case, contestants introduced the testimony, against the objection of proponent, tending to show that the husband was of weak mind, and incapable of protecting himself or his wife, and that on December 1, 1894, two days before the will was signed, he transferred to his wife valuable property, consisting of real estate and stocks, and that this transfer was induced by the Coghills, the proponent taking an active part in the preparation and execution of the papers evidencing the transfers. We are of the opinion this testimony was admissible. Under the contestants' theory, as stated above, the procuring of these transfers was a part of the same scheme and common purpose in the carrying out of which the execution of the will was procured, and for this reason evidence of the former was admissible. It is shown that the only inmates of the home of testatrix, besides Maggie Coghill and the servant, were her husband and her sister, who was about 67 years of age. It is always competent for the contestant to show what opportunities existed, or were created by the persons charged with the exercise of undue influence, for procuring the execution of a will in their favor. Hence it was competent to show that the husband of the testatrix, her natural protector, was of weak mind, and unable to protect her against the fraudulent designs of others, and that efforts were made by some of the family of proponent to induce the sister to leave the house and go to Coosada prior to the execution of the will, and that they did induce her to be absent from the house on the day the codicil was signed, in order that the testatrix might be alone with them. It is upon the same or similar grounds that evidence is admissible to show that the friends and relatives of the testatrix were excluded from her bedside and society. No error was committed in the admission of testimony tending to show any of these facts.

The sister of the deceased, a witness for contestants, in reply to the question whether she had ever heard the deceased make any declaration of affection for any of the Coghills, said she had never heard her express any affection for them, and that "she was wrecked and torn by the

Coghills." The court overruled a motion by proponent to exclude the words quoted, made upon the ground that they were "illegal, incompetent, and irrelevant." The witness was then asked by the contestants what she meant by the expression "wrecked and torn by the Coghills," to which she replied, "because she was always bothered by them so." No objection was made to this explanation. An objection that testimony is illegal is general, and does not raise the point that it is a mere conclusion.—*Steiner v. Tranum*, 98 Ala. 319. Considered in connection with the explanation, to which no objection was made, the testimony was relevant, as tending to show the feelings and state of mind of testatrix towards the Coghills, and no error was committed in refusing to exclude it. The same witness, in reply to the question, "Did you notice anything in the appearance of Mr. Kennedy that had any effect on Mr. Coghill?" said, "I never thought it was anything on Mrs. Kennedy's side. I thought they were a-chiseling Mr. Kennedy out of his money, not her." The latter part of this answer was clearly illegal, and should have been excluded on proper motion; but the proponent, by a single motion, moved to exclude both the question and answer, although the record shows that separate exceptions were reserved to the overruling of the motion. The error, if any, must be predicated on the action of the court in overruling the motion, and not on the character of the exception; and as the question was relevant, and might have elicited legal evidence, the motion, in the form made, was properly overruled.

There are many exceptions in the record to the overruling of objections to questions which were not objectionable in form, but which might have elicited both legal and illegal evidence, and it does not appear that objections were made to the answers to such questions. If illegal evidence is contained in the reply to such questions, the objection should be made to the reply, and the exception directed against the admission of the answer. So, where an answer is not strictly responsive to the question, though apparently suggested by it, the objection to the question does not cover the independent matter thus elicited.—*Eagle & Phœnix Mnfg. Co. v. Gibson*, 62 Ala. 369; *E. T., V. & G. R. R. Co. v. Bayliss*, 74 Ala. 150. There are exceptions to the overruling of general

objections to evidence, a part of which was clearly legal. 3 Brick. Dig. p. 443, §570.

There were many objections to the admission of testimony to show declarations made by the testatrix between the date of the execution of the will and her death. The will was executed December 3, 1894; the codicil was signed February 2, 1895, and testatrix died February 13, 1895. Undue influence, to be effective to invalidate a will, must so operate upon the mind of the testator as to destroy his free agency, and constrain him to make a disposition of his property such as he would not have made of his free will. When made an issue, therefore, two lines of inquiry are opened up: First, the conduct of those charged with the exercise of undue influence; and, second, the effect of this conduct upon the mind of the testator—that is, the mental state produced by it. And this latter inquiry necessarily involves an inquiry into the entire mental structure and development of the testator, not only at the time of the execution of the will, but prior thereto and for a reasonable time thereafter. It has been said that the successful exercise of undue influence presupposes a weak and impaired mind; that, in the absence of actual fraud or deceit, a strong and vigorous mind cannot be successfully operated upon by undue influence. Whether this be strictly true or not, it is clearly competent to show any weakness of mind or peculiarities in the mental structure of the testator, whether natural or caused by disease, such as to render it probable that he was liable to be easily influenced. And, as these qualities of the mind are more or less permanent, the inquiry properly covers a reasonable period before and subsequent to the execution of the instrument. It would be strange, indeed, if the mind of one who had been constrained to execute so solemn an instrument against his will should immediately upon its execution resume its independence of thought and action, and leave no trace of the effect produced by the pressure which had been brought to bear upon it. Hence, inasmuch as the mental condition of a person can be determined only by his acts and declarations, these are admissible, whether made a reasonable time before or after the execution of the will, to establish everything pertaining to the testator himself—his memory, intentions, idiocyncrasies, prejudices, affections, relations with

and feelings towards the beneficiaries and all those who, if he had died intestate, would have been entitled to share in the distribution of his estate, and towards those charged with the undue influence. But they are not admissible when made after the execution of the will, unless part of the *res gestæ,* to establish the acts which constitute the undue influence; as to these they are mere hearsay.—*Shailer v. Bumstead,* 99 Mass. 112; *Russling v. Russling,* 36 N. J. Eq. 603; *Boylan v. Meeker,* 4 Dutch, 274; 27 Am. & Eng. Encyc. of Law, 505. It follows that testimony was admissible to prove any declarations of the testatrix made after the execution of the will, for the purpose we have stated, but not for the purpose of establishing acts of undue influence. Many of the exceptions reserved were to the overruling of objections to questions calling for conversations with and declarations of testatrix after the execution of the will, and no motions to exclude the answers were made. As we have said, error cannot be predicated on the action of the trial court in overruling objections to questions which are unobjectionable in form, but which may elicit both legal and illegal evidence. If the answers to such questions disclosed declarations which did not tend to show the mental condition of the testatrix, a motion to exclude the same should have been made.

The sister of testatrix testified that on Sunday morning preceding the latter's death she was called to her bedside, and the testatrix said: "Amelia, all I have on earth is yours. Don't be bothered. I am so afraid they will bother you about the will, as I have been bothered by them." The witness said: "Nora, did you ever know me to bother anybody?" The testatrix replied: "No; I don't mean you. Not you, the Coghill family. Put them out of the house; put them out of the house." The proponent moved to exclude the words: "I don't mean you, but the Coghill family. Put them out of the house." This conversation was but a week after the execution of the codicil, by which valuable property was given to the proponent and other members of the family. The part of the conversation objected to was clearly admissible as tending to show the feelings of testatrix towards these beneficiaries.

The testimony as to what occurred in the house two or three nights before the death of the testatrix, on the

occasion when Maggie Coghill said: "I am not going out of that room to-night. I am going to put Mollie Kennedy out of the room, if she enters Mrs. Kennedy's room to-night. I am mistress in this house, and I will have you and everybody else know it,"—was properly admitted. It tended to show Maggie's control of the sick room, and a continuation of the plan to exclude from the sick room and society of the testatrix her friends and relatives, even up to the time of her death. Nor was there error in refusing to exclude the testimony of Amelia Kershaw as to the conversation between Maggie Coghill and herself on the Friday after the burial of testatrix, in which the former said: "Miss Amelia, you will be sure to be satisfied when you hear that will read, for me and you will be side by side in the court house, and what you don't understand I will tell you. Joe is going to try to break this will, and William is going to fight that will for you." It was admissible as a declaration by one of the conspirators made in an endeavor to carry out the common object. The conspiracy had not expired, if it existed. Its objects were not accomplished by the mere obtaining the writings purporting to be testamentary. They were of no value without probate, and the common purpose must have contemplated and embraced probate of them.

The objection to the question propounded to Dr. Wood, as to whether the mental condition of the husband of testatrix was perceptible to those who associated with and talked with him, was properly overruled. We have already said that evidence as to the mental condition of the husband was relevant. The testimony elicited was that any person who frequently associated with him would readily observe that he was of unsound mind; and this was relevant as tending to show that the proponent and other members of his family knew of his mental condition when they endeavored to induce him to transfer his property to his wife, the testatrix. But we are of the opinion that the court erred in admitting in evidence the will of A. M. Kennedy, the husband. We are unable to perceive anything in the contents of this will that tends in any way to elucidate the issues involved.

The part of the general charge of the court to which an exception was reserved states a correct proposition of law. It asserts the doctrine laid down in *Bancroft v.*

*Otis,* 91 Ala. 279, and many subsequent cases, that the existence of confidential relations between the testator and principal or large beneficiaries thereunder, coupled with activity on the part of the latter in and about the preparation or execution of the will, raises a presumption of undue influence, and casts upon the latter the burden of showing that it was not induced by coercion or fraud on their part, directly or indirectly.

Charge "a," taken in its entirety, asserts no more than the proposition that if the fraud or undue influence on the part of one or more of the legatees or devisees affects the whole bill, then no portion of it can stand.—*Florey's Ex'rs v. Florey,* 24 Ala. 248.

Charge "e," is free from error, and finds support in *Leverett v. Carlisle,* 19 Ala. 80.

There was no error in the instruction marked "h." It may be argumentative, but that is not matter of error. Nor was there error in giving instruction "k."

Charge "l," asserts that "the presumption of undue influence does arise, and it is incumbent upon the proponent to satisfy the jury that the will expresses the free and intelligent wishes of the testator," upon proof by the contestant of certain facts, among which is the existence of "certain relations between the testator and the beneficiaries well caluclated to give them an undue influence over him." We cannot treat the words last quoted as a sufficient statement of the existence of those confidential relations between the beneficiary and the testator, which, coupled with activity in and about the preparation of the will, cast upon the former the burden of showing that it was not the result of coercion or fraud. The existence of a relation which merely gives one the power to unduly influence another in the execution of his will, unaccompanied by any element of confidence and trust reposed, even though there is the necessary activity in and about the preparation and execution of the will, does not raise the presumption of undue influence. Neither of the facts stated in the charge, nor all combined, gives rise to any legal presumption. The charge, moreover, is erroneous because it exacts too high a degree of proof in rebuttal of the facts stated in the charge, in that it requires such proof to "satisfy the jury." Even where a legal presumption is to be overcome, the law does not require so high a degree of proof. The true

measure of proof, to justify a verdict based upon it, is that it shall reasonably satisfy or convince the minds of the jury.—*Torrey v. Burney,* 113 Ala. 496; *Vandeventer v. Ford,* 60 Ala. 615; *Prince v. State,* 100 Ala. 146; *Rowe v. Baber,* 93 Ala. 425.

We have already said there was evidence requiring the submission to the jury of the issue of undue influence, and also the question whether confidential relations existed between the testatrix and Maggie Coghill or William Coghill. For this reason charges 1, 3, 4, 5, 6 and 7, requested by the proponent, were properly refused. They in effect, request the general charge in favor of the proponent on these issues. Fraud is so intimately connected with undue influence that a charge instructing the jury that there is no evidence that any fraud or coercion was racticed on the testator cannot be given, when there is any evidence tending to show undue influence. While there may be a kind of fraud practiced upon a testator which would not amount to undue influence, as generally defined, yet the exercise of undue influence is fraud, and necessarily involves the idea of coercion, either mental, moral, or physical. Charges 3 and 4 are subject to these criticisms. They are faulty, also, because they ignore the evidence tending to show the existence of confidential relations and activity in the preparation and execution of the will, the effect of which, if found to exist, is to raise the presumption of fraud and coercion, in the absence even of any affirmative evidence that they were practiced. Charge 2 instructs the jury that they "must find a verdict for the proponent on the issue of unsoundness of mind of Mrs. Kennedy." Counsel for appellees admit that there was no evidence of unsoundness of mind, but contend that the charge was properly refused, because a similar charge had already been given at the request of the proponent, and the refusal was, therefore, without injury. This is the doctrine of the later cases. *A. G. S. R. R. Co. v. Burgess,* 116 Ala. 509; *K. C., M. & B. R. R. Co. v. Burton,* 97 Ala. 242; *L. & N. R. R. Co. v. Hurt,* 101 Ala. 36; *Compton v. State,* 117 Ala. 56.

Charges 8, 9, 18 and 21 exact too high a degree of proof, in requiring the verdict to be based upon evidence which "satisfies" the minds of the jury, and were properly refused for this reason. They are also misleading, since they seem to require affirmative evidence of undue

influence, whereas, if the existence of confidential relations, and activity in and about the preparation or execution of the will, should be found from the evidence, the law would presume undue influence without any affirmative evidence of the fact, and the burden would be on the proponent to rebut the presumption.—*Higginbotham v. Higginbotham,* 106 Ala. 318.

We have already shown that there was sufficient evidence to make out a *prima facie* case of conspiracy or common purpose among the members of the Coghill family to procure the execution of the will. Charge 10 was, therefore, properly refused. Charge 11 asserted that the jury was not authorized to find the will or codicil invalid as to Bella Coghill, because there is no evidence to show that she exercised any fraud, deceit, or coercion; and charges 12, 13, 14 and 15 assert the same proposition with respect to each of the other members of the Coghill family. Each of these charges was objectionable, because it assumed that a legacy in favor of one beneficiary could not be declared invalid on the ground that it was procured by undue influence or fraud, unless such beneficiary exercised the influence or fraud, while, as has been heretofore stated, it is entirely immaterial by whom the undue influence or fraud is exercised, all the legacies which are the result thereof being invalid. They are bad for the further reason that they ignore the question of conspiracy, and the presumption arising from the existence of confidential relations and activity in the preparation or execution of the will. Charges 16 and 17 were properly refused for reasons already pointed out. Charge 20 was manifestly erroneous. Whatever of weight may be given to the facts stated therein, being legally in evidence, they were proper subjects for the consideration of the jury. For the errors pointed out, the decree of the court of probate is reversed, and the cause remanded.

Reversed and remanded.