# Councill *v.* Mayhew.

## Contest of Probate of Will.

(Decided April 20, 1911. 55 South. 314.)

1. *Evidence; Experts; Original Document; Production.*—Where documents are used on cross examination merely to show the mental operation of the testator, they were admissible in evidence without producing or accounting for the original.

2. *Same; Cross Examination.*—Where an expert had testified to the testator's insanity and inability to attend to any business requiring any mental concentration, it was permissible to ask him on cross examination whether he considered such mental operation as were shown by letters written by testator as indicative of a sound mind.

3. *Same*—Where an expert testifies to the testator's insanity, it was permissible to ask him on cross examination whether, in his opinion a person of unsound mind could have framed a legislative bill like one claimed to have been framed by the testator.

4. *Same*—Where a witness testified to testator's insanity, it was not reversible error to permit him to be asked on cross examination whether he "supposed" that the testator knew what he was doing when he gave witness checks for professional services.

5. *Same; Mental Capacity.*—On an issue as to testamentary capacity, a witness, whether an expert or not, may not testify that a testator was or was not capable of making a will, that being a matter for the determination of the jury; but on cross examination, a witness who has testified to sanity or insanity, may for the purpose

of testing him, but not to establish the fact, be asked as to such capacity.

6. *Same; Refreshing Memory; Documents; Copies.*—If intended per se to show such mental operations by the testator as are shown by the original document, copies of same become inadmissible unless the proper showing is made for the failure to produce the original; however, if intended only to refresh a witness's memory as to what was said by testator, the copies would be admissible in connection with the testimony, if after refreshing his memory by reading them the witness has an independent recollection of the facts concerning testator's statement.

7. *Words and Phrases; "Supposed"; "Guess".*—"Supposed" and "guess" are frequently used to express one's opinion, though more often for the purpose of expressing conjecture.

8. *Wills; Testamentary Capacity; Elements.*—If one has mind and memory sufficient to understand the business he is engaged in, to remember the property he is about to will, the object of his bounty, and the manner in which he desires to dispose of it, he has testamentary capacity.

9. *Same*—A charge on the elements of testamentary capacity which ignores the capacity for knowledge or memory as to the property to be disposed of, is erroneous.

10. *Same.*—One may possess testamentary capacity, although his mind is not wholly unimpaired.

11. *Same; Undue Influence; Evidence.*—Unequal gifts under a will are not evidence of testator's unsoundness of mind, or that the will resulted from fraud or undue influence.

12. *Same; Undue Influence; Essentials.*—In order to defeat a will undue influence must overcome the will power of the testator and substitute the will of another, must amount to coercion or fraud, and be tantamount to force or fear, thus destroying free agency.

13. *Same*—To defeat a will made by one of sound mind as having been obtained by undue influence, it is not sufficient to show that the circumstances attending its execution are consistant with obtaining it by such influence. It must be shown that they are inconsistent with a contrary hypothesis, and the undue influence must be exercised concerning the will itself.

14. *Same; Partial; Effect.*—A will is not wholly void because a part of it is shown to have been obtained by undue influence.

15. *Same; Testamentary Capacity; Burden of Proof.*—Every person of full age is presumed to have testamentary capacity, and the burden is on one contesting the probate of a will to show mental incapacity at the time the will was executed.

16. *Same.*—When on the whole evidence there is a material conflict, the general burden to show mental incapacity when the will was executed remains on the contestant, although proof of testator's antecedent insanity of a permanent character requires proponent to show a lucid interval, when the will was executed.

17. *Same; Unequal Disposition.*—Unequal treatment of beneficiaries having ostensibly equal claims upon a testator's bounty may be deemed unnatural, and in such a case an unnatural disposition is a fact to be ascertained and considered by the jury upon the issues of undue influence and testamentary capacity.

18. *Same; Fraud; Coercion.*—It is proper to refuse instructions tending to mislead to the belief that fraud amounts to force or coercion or fear in a will contest.

19. *Same; Undue Influence; Burden of Proof.*—The fact that the testator gave his private secretary a legacy of $500 out of an estate valued at from $8,000 to $10,000 was not sufficient to place the burden on the proponent to show that such secretary did not exercise undue influence over testator.

20. *Charges of Court; Misleading; Duty to Request Explanatory*—Where a charge is supposed by an adversary party to be misleading, it becomes the duty of such party to request explanatory instructions.

21. *Same; Argumentative.*—An instruction that affection and desire to ratify another's wish are not such coercion as defeats attempted testamentary disposition, all the better instincts and emotions being left in full play, and are harmless, unless testator's power of independent action is overcome, while argumentative and improper for that reason, will not work a reversal.

22. *Same; Singling Out Facts.*—While it is not error to instruct that the jury may consider particular facts properly in evidence, it is not error not to give such instructions because singling out and emphasizing parts of the evidence.

APPEAL from Madison Probate Court.

Heard before Hon. W. T. LAWLER.

S. J. Mayhew propounded for probate a will, which was contested by William L. Councill. From a judgment admitting the will to probate, the contestant appeals. Reversed and remanded.

The facts and the exceptions to evidence sufficiently appear from the opinion.

The following charges were given for the proponent:

(1)  "I charge you, gentlemen of the jury, that if the testator, William H. Councill, had mind and memory sufficient to understand the business he was engaged in, to remember the property he was about to bequeath, and the object of his bounty, and the manner in which he wished to dispose of it, he was not lacking in testamentary capacity."

(13  "The fact that W. H. Councill may have been afflicted with disease, and it may be admitted, for the sake of argument, that his mind was impaired at the time of the execution of the will and the codicil, if the

jury believe from the evidence that he had the mental capacity to attend to the ordinary duties of life, that he had the mind to remember his relatives and the objects of his bounty, and that his mind was sufficiently strong to know how he wanted to dispose of his property, and no undue influence was exercised over him, the will should stand."

(2) "I charge you, gentlemen of the jury, that testamentary capacity does not imply a mind wholly unimpaired, and undue influence, to defeat a will, must overpower the will of the testator and substitute that of another for it."

(8) "Gentlemen, in order to set aside the will of a person of a sound mind for having been obtained by undue influence, it is not sufficient to show that the circumstances attending its execution are consistent with the hypothesis of its having been obtained by such influences; but it must be shown that they were inconsistent with a contrary hypothesis, and the undue influence must be exercised in relation to the will itself."

(10) "I charge you, gentlemen of the jury, a person of testamentary capacity, and which the law presumes every one to possess, has the right to make unequal gifts of his property, if he sees proper so to do by testamentary disposition; and the fact that he does so does not of itself establish or authorize the inference that the donor is of unsound mind, or that the gift was the result of fraud or undue influence. In cases of wills, other evidence is necessary to justify such conclusion."

(11) "I charge you, gentlemen of the jury, that testamentary capacity does not imply a mind wholly unimpaired; and undue influence, to defeat a will, must overpower the will of the testator, must amount to coercion or fraud, and must be tantamount to force or fear, and thus destroy the free agency of the testator."

[Councill v. Mayhew.]

(12) "Where a will is shown to be the result of undue influence only as to part of the instrument or its provisions, it is not wholly void. In such case, it would be set aside in part and sustained as to the remainder."

(3) "I charge you, gentlemen of the jury, the presumption is indulged by the law that every person of full age has testamentary capacity."

(4) "I charge you, gentlemen of the jury, that the burden is upon the contestant to show mental incapacity at the time the will was executed."

(5) "I charge you, gentlemen of the jury, that an unequal or unnatural disposition of property by the testator among the next of kin or heirs raises no presumption as to mental incapacity."

(6) "I charge you, gentlemen of the jury, the undue influence necessary to overturn a testamentary disposition of property must be of such character as to overpower the will of the testator and substitute another will in its stead. The influence of affection or desire to gratify the wishes of another is not sufficient for that purpose. It must be shown to amount to force and coercion, destroying the free agency of the testator."

(7) Set out in the opinion.

(9) "I charge you, gentlemen of the jury, that affection or desire to gratify another's wishes is not that sort of coercion which defeats attempted testamentary disposition. All the better instincts and emotions are left in full play, and are harmless, unless the will itself —the power of independent action—is overcome."

The following charges were refused to contestant:

(2) "In order for Councill to make a will, he must have been able to remember his property, and if you believe that he included in the will property which he had previously conveyed by deed to Ida Councill, you will

consider this circumstance in connection with other evidence in determining whether he had a disposing memory."

(3) "You are authorized to consider, in connection with all the evidence and circumstances in the case, the fact, if it be a fact, that Councill's salary, after April, 1908, was paid to his wife."

PAUL SPEAKE, for appellant. A witness may not state whether or not another knew a certain thing.— *West Pratt C. Co. v. Andrews,* 150 Ala. 368. A witness whether expert or not may not testify that in his opinion testator was capable of making a will.—*Torrey v. Burney,* 113 Ala. 496; *Ala. C. C. & I. Co. v. Heald,* 154 Ala. 580; 47 Am. S. Rep. 352; 115 N. W. 972; 94 S. W. 979; 114 N. W. 218; 82 N. E. 924; 6 Current Law, 1888. The three notes or letters were not admissible in evidence.—*Snyder v. Burkes,* 84 Ala. __. Charge 1 given for proponent was error.—*Schiefferlin v. Schiefferlin,* 127 Ala. 14. Charge 4 was improper.—*Johnson v. Armstrong,* 97 Ala. 731. Charge 6 should have been refused.—*Coghill v. Kennedy,* 119 Ala. 641. On these same authorities charges 8 and 10 should have been refused. The same is true of charge 7 and 13.

DAVID A. GRAYSON, for appellee. The evidence authorized the jury in finding in favor of the will.—*Harrison v. Harrison,* 126 Ala. 323. The making of the codicil was a reaffirmance of the will.—*Taylor v. Kelly,* 31 Ala. 59. Counsel discuss assignments of error relative to evidence, and insist that it was competent for the witnesses to testify as to the capacity of the testators to make the will.—*Steed v. Knowles,* 97 Ala. 570; *Mfg. Co. v. Gipson,* 67 Ala. 372; *Moore v. Speers,* 80 Ala. 129; *Bulger v. Ross,* 98 Ala. 267. Counsel discuss

the charges given and refused, and insists that the court committed no error therein, and in support thereof cite. —*Schiefferlin v. Schiefferlin,* 127 Ala. 14; *Higginbotham v. Higginbotham,* 106 Ala. 314; *Bancroft v. Otis,* 91 Ala. 279; *Henry v. Hall,* 106 Ala. 84; *Leeper v. Taylor,* 47 Ala. 221.

SOMERVILLE, J.—The appellee, S. J. Mayhew, as executor, propounded for probate the will of Wm. H. Councill, and the appellant, Wm. Councill, a son of the testator, contested the proponent's petition on several grounds—the material ones for the purposes of this appeal being (1) that the testator was of unsound mind and lacking in testamentary capacity; (2) that he was so weak and feeble mentally as to be easily influenced, and that he was unduly influenced in the execution of the will by Mrs. C. B. L. Hamilton, his private secretary, who stood in confidential relations to him, and who witnessed the will and was a beneficiary under it; and (3) that the execution of the will was procured by the fraud of said Mrs. C. B. L. Hamilton.

The will was executed on March 16, 1907, and a codicil was added on April 6, 1908. The probate of the codicil is contested on the ground that the testator was not then of sound mind and disposing memory.

The record purports to set out all the evidence, and this evidence is strongly conflicting on the question of the decedent's testamentary capacity. On the question of undue influence, there is some evidence tending to show confidence reposed by the testator in his private secretary, Mrs. Hamilton, and the acquisition by her of more or less influence over his mind and sentiments, and of opportunity on her part for the undue exercise of such influence over him in the execution of the will. There are 32 assignments of error shown by the record,

of which we shall consider only those discussed in his brief by counsel for appellant.

1. Dr. Sterrs, a witness for contestant, testified that he had known the testator intimately for 20 years, and had treated him professionally in the years 1905, 1906, and 1907. After detailing particular instances of mental weakness, mind wandering, emotional excitability, and delusions, the witness testified that in his opinion the testator was not of sound mind at any time during the year 1907, or until his death, which occurred on April 17, 1909, and that "he was not capable of attending to any business matter requiring mental concentration." On cross-examination, a number of documents, purporting to be copies of letters written to various public officials, and including a draft of a bill intended to be passed by the Legislature, all bearing date of January, 1907, and relating to the matter of state aid to the negro school of which testator was the president, were shown to the witness, after which he was asked to "state whether or not those letters are the product of a sound or unsound mind." Contestant objected to the question on several grounds, viz.: (1) That the answer would be immaterial; (2) that it would be a conclusion of the witness; (3) that the original letters were not produced; and (4) that it was not shown that they were written or dictated by the testator. Upon the statement by proponent's counsel that he would meet the last objection by proper proof later on, the court overruled the objections, and the witness answered: "Considering the letters by themselves, without taking into consideration by whom they were written, or any other knowledge I might have as to the writer, I would say they were the product of a sound mind."

[Councill. v. Mayhew.]

At a subsequent stage of the trial, proponent's witness, Mrs. Hamilton, testified that the documents above referred to were carbon copies of the originals, the contents of which were dictated to her by the testator on the days of their several dates. As thus used, these documents simply presented to the view of the witness certain alleged mental operations of the testator, and it was immaterial, for this purpose, that the original letters, as signed by the testator, were not produced nor accounted for. If the testator dictated the contents of the letters, his words thus spoken might be placed before the witness in any way intelligible to him. The answer called for would, perhaps, be objectionable on direct examination, as being a mere opinion upon a matter as to which the jury are as competent to reach a conclusion as an expert witness. But we need not decide as to that. The question was asked on the cross-examination of an expert witness, who had testified to the insanity of the testator during the two or three years preceding his death, and his inability to attend "to any business matter requiring mental concentration." It was plainly no more than an inquiry whether the witness, who professed knowledge of insanity in general, and of the testator's mental condition in particular, regarded such mental operations as those shown by the letters as indicative of a sound mind; and we think neither the question nor the answer transgressed the proprieties of cross-examination.

2. Referring to the legislative bill, proponent's counsel on cross-examination asked the same witness this question: "In your opinion, could a person of unsound mind have framed a bill like that?" This was objected to on the same grounds as was the question about the letters. The objection being overruled, the witness answered: "It is highly improbable that a

person of unsound mind could have framed a bill like that." Motion to exclude the answer, on the same grounds, was overruled. We interpret this question as meaning, in effect, "Would the exhibition of the mental power requisite for the framing of such a bill be conclusive proof of the author's sanity?" It may be conceded that even an expert alienist is incompetent to speak to such a speculative conclusion, for the purpose of establishing it as a fact, on his direct examination. But, as pointed out above, the rule on cross-examination is altogether different; and such a question, especially where, on direct examination, the witness has stated his opinion, is calculated to test the witness' knowledge of the subject, and the fairness and value of his conclusions, and perhaps, in the present case, to in some degree qualify the force of his opinion as to the testator's insanity. Where the question is proper, the answer, if responsive, cannot be excluded.

3. Dr. Sterrs stated on cross-examination that, during the time he testified Councill was non compos, he received from him autograph bank checks in payment for his professional services; and, when so receiving the checks, he knew what Councill's condition was. This question was then propounded to him: "Doctor, do you suppose he knew what he was doing when he signed those checks?" Contestant's objection on the ground of illegality was overruled, and the witness answered: "I guess he did." Contestant's objection to the answer, "because it was a mere guess and illegal evidence," was also overruled. Apart from the consideration of their *form*, both quesion and answer were manifestly proper. While the same particularity in this respect is not required on cross-examination as on direct, in general witnesses cannot be interrogated as to their *suppositions*, nor can they offer their *guesses*. Much unprofit-

[Councill v. Mayhew.]

able quibbling by courts has resulted from the effort to enforce this and similar rules of exclusion. The rule of common sense undoubtedly is that, where the witness shows a knowledge of facts upon which a rational opinion may be grounded, his opinion or conclusion being competent, and where it is evident that he is giving his opinion or conclusion on such facts, the mere verbal form of either the question or the answer cannot be deemed of controlling importance. Hence a witness' *understanding* with another has been regarded as a synonym for *agreement.—Griffin v. Isbell,* 17 Ala. 184; *Saltmarsh v. Bower,* 34 Ala. 613. What a witness *considered* has been taken as his *opinion.—Hubbard v. State,* 72 Ala. 164. Also, what he *regarded.—Talladega Ins. Co. v. Peacock,* 67 Ala. 253. What a witness *believed* has been held as the statement of a *fact.— Head v. Shaver,* 9 Ala. 791; *Elliott v. Dyche,* 80 Ala. 376. Also, what a witness thought.—*Turner v. McFee,* 61 Ala. 471; 1 Greenl. on ·Ev. (16th Ed.) p. 527. We judicially know that, in common parlance, "suppose" and "guess" are frequently used as expressions of the speaker's enlightened opinion, though they are more apt for the expression of conjecture. In the present case we think it sufficiently evident that they were used as equivalents for "opinion," and were therefore not obnoxious to the rule. But, even as a *mere guess,* the witness' statement has some tendency to contradict his direct testimony as to the testator's mental condition, or at least to impair the integrity of his opinion, and its elicitation was not improper.

4. Under the same conditions, and for the reasons above discussed, the question to the contestant, Dr. W. H. Councill, "Do you suppose your father knew what he was doing when he signed those checks?" and his

answer, "I suppose he did," are held to be unobjectionable.

5. It is well settled that, on the issue as to testamentary capacity, a witness, whether expert or not, cannot testify that the testator was or was not capable of making a will, because, as it is said, this is the very issue to be submitted to the jury.—*Walker v. Walker,* 34 Ala. 469, 473; *Hall v. Perry,* 87 Me. 569, 33 Atl. 160, 47 Am. St. Rep. 352; 28 A. & E. Ency. Law, 102. The court erred, therefore, in receiving such testimony from the witnesses Mrs. Archer and Otis Councill. The only exception to the rule stated is on the cross-examination of a witness who has testified as to the sanity or insanity of the testator, and then only to test the witness, and not to thus establish the fact.—*Dominick v. Randolph,* 124 Ala. 557, 564, 27 South. 481.

6. We are unable to discover any propriety in the proponent's use in evidence of the letters written by the contestant to Mrs. Hamilton. They appear to be wholly irrelevant, and should have been excluded.

7. The twelfth and thirteenth assignments of error, relating to the admission in evidence of the carbon copies of certain letters and a bill designed to be introduced in the Legislature, are not insisted on in argument; but, as the same questions may recur on another trial, we lay down the rule which should govern in the use of those documents. If they are used as copies of originals, and are intended per se to evidence such mental operations on the part of the testator as are shown by the originals, then clearly the rule of primariness would exclude the copies, unless a proper showing is made for the non-production of the originals. But if they are used as memoranda to refresh the memory of a witness as to what words were verbally spoken by the testator, the copies would be admissible in evidence in

connection with the witness' testimony only in the event that, after refreshing his or her memory by reading them, there is still no independent recollection of the fact of such words having been spoken.—*Acklen v. Hickman,* 63 Ala. 494, 35 Am. Rep. 54. The only material question is whether such words and thoughts emanated from the mind of the testator, and the mental processes thus pictured are equally persuasive of his mental condition, whether spoken or written.

8. Numerous charges as to burden of proof, undue influence, and testamentary capacity, were given for the proponent; each being the subject of a separate assignment of error by the contestant. As the judgment must be reversed on other grounds, it is not necessary to discuss all of these charges in detail, and we do so only so far as may be necessary for the purposes of another trial, with the precautionary observation that not every statement of the law found in judicial opinions or text-books is proper to be given in a charge to the jury, although it may be theoretically correct.

(1) Charge 1 properly instructs the jury as to the elements of testamentary capacity.—*Mullen v. Johnson,* 157 Ala. 266, 47 South. 584. But charge 13 is, by comparison, faulty in not predicating capacity for knowledge or memory as to the property to be disposed of. The elements of testamentary capacity have been so often declared by this court that it would seem to be almost impossible for any trial court to fall into error in stating the requirements.—*Taylor v. Kelly,* 31 Ala. 59, 68 Am. Dec. 150; *Leeper v. Taylor,* 47 Ala. 221; *Kramer v. Weinert,* 81 Ala. 416, 1 South. 26; *Burney v. Torrey,* 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33; *Schieffelin v. Schieffelin,* 127 Ala. 14, 28 South. 687.

(2) Charges 2, 8, 10, 11, and 12 assert correct propositions of law, and were properly given, though several of them may require explanation.

(3) Charges 3 and 4 correctly state the presumption and place the burden of proof as to testamentary capacity. While it is true that proof of the antecedent insanity of the testator, if of a permanent nature, requires the proponent to show a lucid interval when the will was executed, still on the whole evidence, when there is material conflict, the general burden of showing insanity at the time of execution remains on the contestant.—*O'Donnell v. Rodiger,* 76 Ala. 224, 227, 52 Am. Rep. 322. And if the charge as given had a tendency to mislead, an explanatory charge should have been requested.

(4) An *unequal* disposition of property per se raises no presumption of undue influence, nor of testamentary incapacity, nor is it per se unnatural; but the unequal treatment of those who ostensibly have equal claims upon the testator's bounty, or the preference of one to the exclusion of another, may under the circumstances of a particular case, be deemed *unnatural.* In such a case, an *unnatural* disposition is a fact to be ascertained and considered by the jury upon either of the issues stated.—*Gilbert v. Gilbert,* 22 Ala. 533, 58 Am. Dec. 268; *Burney v. Torrey,* 100 Ala. 157, 169, 14 South. 685, 46 Am. St. Rep. 33; *Henry v. Hall,* 106 Ala. 84, 17 South. 184, 54 Am. St. Rep. 22. Charge 5 confuses the terms *unequal* and *unnatural,* and was clearly erroneous at least in its inclusion of the latter term.—*Stubbs v. Houston,* 33 Ala. 553, 555; *Fountain v. Brown,* 38 Ala. 74; *Eastis v. Montgomery,* 93 Ala. 299, 9 South. 311, s. c. 95 Ala. 492, 11 South. 204, 36 Am. St. Rep. 227.

(5) The last clause of charge 6, to the effect that undue influence, to overturn a will, "must be shown to amount to force *and* coercion, destroying the free agency of the testator," has not been sanctioned by this

court in that precise form, so far as we are aware. But in the case of *Taylor v. Kelly*, 31 Ala. 64, 68 Am. Dec. 150, a charge that "it must be shown to amount to force *or* coercion" was approved. It seems to have been extracted from the text of 1 Williams on Executors, p. 67.

Charge 7. "If you believe from the evidence that the will was not obtained by the exercise of influence amounting to coercion, by a motive tantamount to force or fear, such was not an undue influence," seems to have been approved by this court in three cases, *Taylor v. Kelly*, 31 Ala. 64, 68 Am. Dec. 150; *Eastis v. Montgomery*, 95 Ala. 490, 11 South. 204, 36 Am. St. Rep. 227 (tacitly approved without discussion) ; and *Schieffelin v. Schieffelin*, 127 Ala. 25, 28 South. 687. This language also is taken from the text of 1 Williams on Executors, p. 68, but with an unfortunate elision, which obscures, if not completely destroys, its sense and meaning.

It is unnecessary to quibble over the meaning of "force" and "coercion," or of the phrases "amounting to," or "tantamount to, force and fear." It is certain that, whatever the judicial mind may have intended to include in or suggest by these expressions, or however appropriate their narrow scope may have been to the evidence to which they were directed in those cases, neither of the charges above quoted are inclusive of all the phases of undue influence as a ground for avoiding a will. In the leading case of *Bancroft v. Otis*, 91 Ala. 279, 290, 8 South. 286, 289, 24 Am. St. Rep. 904, it is said: "The undue influence which will avoid a will, must amount to coercion *or fraud.* * * * It may exist *without either coercion or fraud.* It may result entirely from the confidential relation, without activity in the direction either of coercion or fraud, on the part of the beneficiary occupying the position of dominant

influence." In *Eastis v. Montgomery*, 93 Ala. 300, 9 South. 314, it is said: "The undue influence which will avoid a will must amount to coercion *or fraud*—an influence tantamount to force or fear, and which destroys the free agency of the party, and constrains him to do what is against his will." In *Burney v. Torrey*, 100 Ala. 168, 14 South. 688, 46 Am. St. Rep. 33, it is said: "A bequest or devise, procured by *fraud and deceit*, such as, without the imposition, would not have been made, even though there is *neither force nor fear* brought to bear, is undue influence, and will avoid the instrument as a will. Sufficient capacity, free agency, without the imposition of fraud or deceit, are the elements of a valid will." In *Coghill v. Kennedy*, 119 Ala. 641, 657, 24 South. 459, deceit and the exposition of fear or importunity are clearly distinguished as differing phases of undue influence. And, finally, in *Mullen v. Johnson*, 157 Ala. 272, 47 South. 584, the above extract from *Eastis v. Montgomery* is quoted with approval. See, also, 1 Williams on Executors, p. 71; 29 A. & E. Ency. Law, pp. 106, 107.

If charges are really intended to instruct juries and not to puzzle them, it seems evident that neither of these charges should have been given. Neither in law nor in lexicography does *fraud* amount to *force* or *coercion;* nor is *fraud* an influence tantamount—that is, equivalent—to *force or fear*. Such expressions, with proper contextual explanation, may not mislead learned lawyers; but, isolated, as here, and applied to a case of confidential relations, they not merely have a tendency to mislead, but must inevitably mislead, the jury, and are positively erroneous. In accord with these views we find charge 6 specifically condemned in *Higginbotham v. Higginbotham*, 106 Ala. 318, 17 South. 516, but without any allusion to the cases criticised above.

[Councill v. Mayhew.]

These criticisms are not applicable to such a charge as charge 3, approved in *Blakey v. Blakey,* 33 Ala. 615, 621, that "undue influence is influence that amounts to, or is equivalent to, *moral* coercion," although even this is lacking in precision as applicable to fraud.

(6)   Charge 9 in its second clause contains an argumentative statement, which is improper in a charge, though its inclusion is not reversible error.

(7)   It is insisted that charges 6, 8, and 10 are erroneous, in that they in effect place on contestant the burden of proof as to the existence of undue influence, in spite of the fact (as alleged) that one of the beneficiaries under the will—Mrs. Hamilton—occupied a confidential relation to the testator, and was active in preparing the will to such an extent as to shift the burden of proof to the proponent, under the rule announced in *Bancroft v. Otis,* 91 Ala. 279, 8 South. 286, 24 Am. St. Rep. 904, and other cases.

Conceding that the evidence in the record establishes a status of confidential relations between the testator and his private secretary, Mrs. Hamilton, and that he was to some extent subject to her influence, we are nevertheless of the opinion that the facts shown are not sufficient to impose upon the proponent the burden of showing that in the execution of the will the testator's mind was not unduly influenced by her.   She was his amanuensis, and it was her duty in that capacity to write for him whatever he dictated; and in thus merely responding to his commands it cannot be plausibly urged that she was active in procuring the execution of the will.   It appears that its contents were largely taken from a previous will, from which the testator read as he dictated, and that he himself selected and called in the other attesting witness.   Mrs. Hamilton was not the principal, nor even an important or con-

siderable, beneficiary under the will. A legacy of $500 out of an estate of $8,000 or $10,000, was not, on its face, an undue or unnatural amount to bestow upon a private secretary who had served him long and faithfully, and whom he highly regarded. As declared in *Eastis v. Montgomery*, 95 Ala. 493, 11 South. 206, 36 Am. St. Rep. 227: "Such activity, not of proponent's own motion, or prompted by personal motives, but in behalf of the testatrix, and in furtherance of her purposes, will not combine with confidential relations to shift the burden of proof as to undue influence upon the proponent."

But, even if our conclusion were otherwise as to this, we think that another principle would dispose of contestant's contention adversely to him. There is no suggestion in the evidence that the testator's wife or daughter, who were given almost the entire estate, exerted any undue influence, in the making of the will, nor is there the slightest evidence of conspiracy or collusion between them and Mrs. Hamilton. And hence, if on the facts shown *her* legacy were by reason of her relationship and activity presumptively tainted by the operation of *her* undue influence, this would not place on proponent the burden of exculpation as to the disconnected provisions of the will in favor of the most natural objects of the testator's bounty. So the instructions complained of were abstractly correct, and correct as applicable to the rest of the will; and, if misleading as to Mrs. Hamilton's legacy, a special instruction should have been requested. We are aware that the proposition stated was expressly left undecided in the case of *Coghill v. Kennedy*, 119 Ala. 641, 660, 24 South. 459; but we have no doubt as to its correctness.

(8) It is not error to instruct the jury that they may look to or consider this or that fact, which is prop-

erly in evidence; but a party has no right to require the court to thus single out and give emphasis to parts of the evidence. Contestant's charges 2 and 3 were therefore properly refused.—*Bancroft v. Otis*, 91 Ala. 291, 8 South. 286, 24 Am. St. Rep. 904.

For the errors pointed out, the judgment of the probate court must be reversed.

Reversed and remanded.

ANDERSON, MAYFIELD, and SAYRE, JJ., concur.