[Keeble v. Underwood.]

# Keeble *v.* Underwood.

### *Probate of Will.*

(Decided June 17, 1915. Rehearing denied July 2, 1915.
69 South. 475.)

1. *Charge of Court; Covered by Those Given.*—It is not error to refuse an instruction the substance of which has been already given in other written instructions.

2. *Wills; Validity; Undue Influence; Burden of Proof.*—Where a legatee occupies a position of trust and confidence to the testator, and takes part or exercises some activity in the preparation, or the procurement of the execution of the will, the burden of proof is shifted to such beneficiary to show that the will was not superinduced by undue influence; but in a case involving a gift by a parent to a child such burden is not shifted to the beneficiary until facts or circumstances are shown to establish that time and circumstance have reversed the order of nature, and that the dominion of the parent has been displaced, and that the parent is subservient to the child.

3. *Same; Question of Fact.*—Under the evidence in this case it was a question of fact to be submitted to the jury as to whether the parent or the child was the dominant party in procuring the execution of the will.

4. *Same; Instruction.*—In this case a charge that if the jury believed that the will was a result or product of undue influence, exercised by proponent over his mother, they should find for contestant, failing to state that the determination of the jury should be based upon the evidence, was properly refused.

5. *Same.*—Where the proponent was the son of testatrix, a charge was refused without error as being too general in definition, which asserted that confidential relations exist between two persons whenever one of such persons trusts in and relies on the other.

APPEAL from Autauga Probate Court.

Heard before Hon. R. L. FAUCETT.

Petition by W. J. Underwood for the probate of the will of Martha Underwood, contested by Bertha Hall Keeble. From a judgment admitting the will to probate, contestant appeals. Reversed and remanded.

The following charges are noted in the opinion, aside from those set out, as refused to the contestant: (5)

[Keeble v. Underwood.]

I charge you that confidential relations exist between two persons whenever one person trusts in and relies on another, and if you believe that Mrs. Underwood trusted and relied upon her son, W. J. Underwood, at the time of the execution of the paper offered for probate, and W. J. Underwood was active in and about the preparation of said paper, the law presumes the exercise of undue influence on his part, and casts upon him the burden of rebutting that presumption.

(6) If the jury believes that the instrument offered for probate is the result or product of undue influence, exercised by proponent, W. J. Underwood, over his mother, they should find for the contestant.

(1) If you believe from the evidence that at the time of the execution of the instrument offered for probate there existed between Mrs. Underwood and her son, W. J. Underwood, a confidential relationship, in which relationship Mrs. Underwood reposed confidence and trust in her said son, that W. J. Underwood is a large beneficiary under his mother's will, and that W. J. Underwood was active in and about the preparation and execution of the will, such as the initiation of proceedings for the preparation of the will, or employing the attorney who drew the will, and that like, I charge you that the law raises a presumption of undue influence exercised by W. J. Underwood over his mother, and casts upon him the burden of showing that the execution of the will offered for probate was not induced by coercion or fraud on his part, directly or indirectly.

RUSHTON, WILLIAMS & CRENSHAW, and EUGENE BALLARD, for appellant.

HILL, HILL, WHITING & STERN, and GUY RICE, for appellee.

GARDNER, J.—This is an appeal from a decree of the probate court of Autauga county, admitting to probate an instrument purporting to be the last will and testament of Mrs. Martha Rebecca Underwood, deceased. The said alleged will was offered for probate by W. J. Underwood, a son of the testatrix, a beneficiary under the will, and also one of the executors.

Appellant, Mrs. Bertha Hall Keeble, a granddaughter of the testatrix, and Mrs. Eula Hall, a daughter of the contestant, filed a contest of said will, alleging two grounds: the first being that. testatrix was mentally incapacitated to make a will, and the second that the alleged will was the result of undue influence exercised over her by her son, W. J. Underwood, the proponent. By leave of the court Mrs. Eula Hall was stricken as a party contestant, and the contest was then prosecuted alone by the appellant, who, as above stated, was a granddaughter of the decedent. The jury returned a verdict in favor of the proponent, and decree was duly entered admitting the will to probate. From this decree the appeal is prosecuted, and the only errors relied on for reversal relate to the refusal of the court below to give certain charges requested in writing by the contestant.

(1) We will first take note of that ground of the contest based upon mental incapacity. Aside from what was said by the court in its oral charge to the jury on the question of mental incapacity, the following charges in writing were given by the court at the request of the contestant: "(8) Unless testatrix, at the time of the execution of the instrument, had mind and memory sufficient to understand the business she was engaged in, to remember the property she was about to bequeath, the objects of her bounty, and the manner in which

she wished to dispose of it, I charge you she was without testamentary capacity.

"(9) The court charges the jury on behalf of contestant that, if the jury are reasonably satisfied from the evidence that at the time of making her signature to the instrument propounded for probate in this case, Mrs. Underwood did not have testamentary capacity to make a will, the verdict must be for contestant, and in this event they must disregard and not consider the inquiry of undue influence."

We are of the opinion that these given charges embraced in substance what was contained in refused charges 2 and 4 upon this phase of the question, and reversible error cannot, therefore, be predicated upon refusal of the same. We have not overlooked the insistence of counsel for appellee that the evidence was insufficient, under the authorities, for the submission to the jury of the question of mental incapacity.—*Lockridge v. Brown*, 184 Ala. 106, 63 South. 524; *Murphree v. Senn*, 107 Ala. 428, 18 South. 264; *Pritchard v. Fowler*, 171 Ala. 662, 55 South. 147; *Watkins v. Yeatman*, 189 Ala. 370, 66 South. 707; *Posey v. Donaldson*, 189 Ala. 366, 66 South. 662. However, as what we have here said disposes of the ruling in reference to these charges, and the cause must be reversed for error hereinafter noted, there exists no necessity for a determination of that question, for we need not and cannot anticipate that the evidence will be the same upon that question on another trial.

The question considered as of prime importance upon this appeal relates to the refusal of the court to give certain written charges as to the question of undue influence. While the court below submitted that question to the jury, as shown by its oral charge, no effort

was made to cover some phases of that feature of the case set out in requested charges, but the question of undue influence was treated merely in a general way. While several charges dealing with the question were refused, none were given upon this subject.

(2) It is now well settled that where a donee occupies to the donor a position of trust and confidence, such as that between a beneficiary occupying a confidential relation and the testatrix, and such donee or beneficiary takes part or exercises some activity in the preparation or in the procurement of the execution of the will, the burden of proof is shifted to the beneficiary to show that the contested instrument was not superinduced by undue influence.—*Scarbrough v. Scarbrough,* 185 Ala. 468, 64 South. 105; *Bancroft v. Otis,* 91 Ala. 279, 8 South. 286, 24 Am. St. Rep. 904. This is the general rule. However, while the relationship of parent and child is per se confidential, yet it is well settled that it is always presumed prima facie that in all transactions between them the parent is the dominant party and that such are free from undue influence. The mere relationship alone, coupled with activity on the part of the child in securing the preparation of the will, is not sufficient, under the authorities, to shift the burden of proof upon the child in cases of gift by the parent, as we hold that, prima facie, the parent is the dominant spirit in the transaction, and gifts flow naturally from parent to child. One of the foundations of the rule as to presumption of undue influence is the theory that the donor is the weaker party. While the relation of parent and child is per se confidential, yet in view of the presumption, recognized in this state and abundantly supported by authorities elsewhere, that the parent is the dominant spirit, the

burden of proof is not shifted upon the mere proof of relationship and activity, on the part of the beneficiary child, in the preparation of the will, and to such cases the general rule as stated in *Bancroft v. Otis,* 91 Ala. 279, 8 South. 286, 24 Am. St. Rep. 904, does not apply. The question was directly presented in *Bain v. Bain,* 150 Ala. 453, 456, 43 South. 562, 563, where in commenting upon charge 1, set out on page 454 of the report of the case (43 South. 562), such charge showing the relationship of parent and child and activity on the part of the son in the preparation of the deed, this court said: "The facts hypothesized in the charge fell short of making a case of confidential relations between the father and son, such as would shift the burden of proof to the grantee to show that the deeds were voluntarily made"—citing *McLeod v. McLeod,* 145 Ala. 269, 40 South. 424, 117 Am. St. Rep. 41.

As was said by this court in *Hawthorne v. Jenkins,* 182 Ala. 392, 62 South. 505, after quoting from Pomeroy on that subject: "The authorities cited by Mr. Pomeroy are numerous, and amply support the text. They justly distinguish the relation of parent and child, in so far as gifts or grants * * * are concerned, from other classes of confidential relations, and they revoke such benefits only where the exercise of actual undue influence is shown. * * * The fundamental reason for this distinction is that gifts and benefits flow naturally from parent to child, and are in accordance with the social instincts and the common practice of all mankind."—citing *Burton v. Burton,* 82 Vt. 12, 17 Atl. 182, 17 Ann. Cas. 984, and many other authorities.

And again, in same opinion: "In such cases the burden [of proof] is upon the complainant to overcome

this presumption, and to reasonably satisfy the court that time and circumstances have reversed the order of nature, so that the dominion of the parent has not merely ceased, but has been displaced by subservience to the child. * * * Cases of this kind plainly turn upon the exercise of actual undue influence, and not upon any presumption of invalidity; a gift from parent to child is certainly not presumed to be invalid."— 2 Pom. Eq. Jur. § 962."

In this state, therefore, in a case involving the gift by a parent to a child, in order to shift the burden of proof to the beneficiary, facts or circumstances should be shown, to establish that time and circumstances have reversed the order of nature and that the dominion of the parent has been displaced by subservience to the child. As was said by this court in the case of *Dolberry v. Dolberry*, 153 Ala. 434, 44 South. 1018: "Where evidence is introduced showing that the parent has reached the state of senility and is dominated by the child, it would then be incumbent upon the child to show the fairness of the transaction."

See, also, *Whaley v. Crittenden*, 192 Ala. 341, 68 South. 886.

In *McLeod v. McLeod*, 145 Ala. 269, 40 South. 414, 117 Am. St. Rep. 41, it was said that: "Where the donor and donee stand in such confidential relations as parent and child, and the donor is the dominant party, whether he be parent or child, no one would for a moment question the validity of the gift on the ground of undue influence, as such presumption in law arises only where the weaker party is the donor."

In the same case it was said: "In a case like the one before us, the question as to who is the dominant spirit in the transaction is one of fact, and becomes one of

[Keeble v. Underwood.]

vital importance in the application of the doctrine above stated."

In *Couch v. Couch,* 148 Ala. 332, 42 South. 624, the same rule was applied, and the court found from the evidence that the donee was the dominant spirit. The determination of the question as to who was the dominant party, in cases of this kind, being dependent upon the facts and circumstances of each particular case, it clearly appears that no general rule can with any degree of safety be laid down. Speaking to the question of such confidential relationship as that referred to in *Bancroft v. Otis, supra,* this court, in *Coghill v. Kennedy,* 119 Ala. 641, 24 South. 459, said: "It may be stated generally that the relation exists wherever confidence is reposed and accepted, and the one has it in his power, in a secret manner, for his own advantage, to sacrifice those interests of the other which he is bound in honor and good conscience to protect. * * * The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. If there is any evidence tending to show the existence of such relations on the part of a large beneficiary, and activity on his part in and about the preparation or execution of the will, it is the duty of the court to submit to the jury the ascertainment of their existence as a fact."

In *Neal v. Neal,* 155 Ala. 604, 47 South. 66, it was shown that the son had been for 20 years the sole and trusted agent and adviser of his mother, the grantor.

The note to the case of *Smith v. Smith,* 35 L. R. A. (N. S.) 945, is both interesting and instructive in this connection, and many authorities are there cited. The author of the note states that: "It may perhaps be questioned whether many of the courts, in their desire to

protect age and feebleness against importunity and fraud, have not overlooked the legal and natural right of the old and feeble parent to prefer one child over another, and have his acts of preference protected, and not struck down, by the courts."

This apprehension on the part of the author may perhaps find application in some of the reported cases; but, if so, we entertain the view that it was but the result of misapplication of the rule to the particular case, and that the fault did not lie in the rule itself.

(3) The question first to be determined, therefore, is whether or not there existed in this case, between mother and son, such confidential relationship as is referred to in *Bancroft v. Otis* and *Coghill v. Kennedy, supra,* or, to state it differently, whether or not there was evidence sufficient to authorize a reasonable inference by the jury that time and circumstances had reversed the order of nature, and that the dominion of the parent had ceased and been displaced by subservience to the child; in brief, and to state the question in still another manner, whether or not there was evidence from which the jury could reasonably infer that the son, the donee, had become and was the dominant spirit.

We will make no effort to treat the evidence in detail, but merely refer thereto in a very general manner. The evidence shows that testatrix was about 82 or 83 years of age, and that the son, since reaching manhood, had lived with his mother in her home for a period of about 20 years. There was a tendency of the evidence to show that he paid no board, and cultivated her land without rent. While the son did not attend to her business affairs during all these years, but they were in fact looked after by T. J. Hall, son-

in-law of testatrix, who lived in Selma, and who held a power of attorney from testatrix, yet there is testimony tending to show that, upon the importunity of the son, the mother at last got from said Hall the power of attorney, and that during the last year of her life the son looked after some of her business affairs. The witness Hall testified: "W. J. Underwood never had anything to do with collecting the rent until last year, when he got hold of the rent notes. He collected these notes and deposited the money in the bank to his mother's credit. Last year was the first year he intervened."

There was also evidence tending to show that at the time of the execution of the will testatrix had been confined to her bed with a fractured hip for something like three weeks, and she was attended by a physician whose testimony shows that she suffered much pain most of the time. He testified: "She had a rheumatic trouble. I gave her asperin to allay her pain. Asperin has a sedative effect; * * * more of a deadening or hypnotic effect than anodyne. One benumbs the sensibilities more than the other. The difference between the two is merely one of degree. She took medicine regularly while under my treatment, which was from the 15th day of September up to the 4th of October, about three weeks."

There was evidence tending to show a want of recognition of her brother when he was on a visit to her some few days before the execution of the will. There was evidence tending to show that testatrix had executed several wills prior to this time, the last one being in the possession of said Hall, and that it was more favorable to his wife than the one here under consideration, and likewise evidence of a threat on the part of

the son that he would get a lawyer, carry him to his mother, and "make her fix her business." The testatrix died on March 19th following the execution of the will on October 4, 1913.

There was evidence tending to show that the son, W. J. Underwood, procured the services of the lawyer who wrote the will, and who had previously represented Underwood in legal matters, but who was not the retained attorney of Mrs. Underwood; that he telephoned for the lawyer to come to Selma in an automobile, and met him at the ginnery, went with him to the house, and introduced him to testatrix. The evidence shows, however, that the son left the room and was not present while the will was being discussed, and that he made no suggestion in regard thereto in the presence of the attorney, but that he did return to the room while his mother was signing the will. The physician who attended Mrs. Underwood testified that: "She was old, but not any more childish than other persons of that advanced age. People of that age are childish, more or less, when it comes to taking medicine."

After a careful consideration of all the testimony in the case, we are persuaded that it was a question for the determination of the jury as to who was the dominant spirit in this transaction, and that if the jury shall decide that the order of nature had been reversed, and the dominion of the parent displaced by subservience to the child, and that the son had been active in procuring the execution of the will, then the burden of the proof would shift to the donee. We are of the opinion, therefore, that charge 1, requested by the contestant, sufficiently hypothesizes the facts under the evidence in this case to bring it within the principle just discussed, and that refusal of the said charge must work a reversal of the cause.

Counsel for appellee does not appear to controvert what is here said, so far as the law is concerned, but insists that the evidence was insufficient for the question of undue influence to be submitted to the jury and that therefore the refusal of the charge was error without injury. What we have here said discloses that we do not agree to this contention. It is, of course, understood that while we have herein commented only upon certain tendencies of the evidence, and with no indication whatever as to the weight of the same, it is solely to the end of showing tendencies sufficient to warrant the submission of the question of undue influence to the determination of the jury. None of the charges asked by the contestant upon that phase of the case relating to undue influence were given by the court, and the general charge dealt with the question in a general way only. There is, therefore, no room for the application of the doctrine of error without injury.

(4) Charge 6 was properly refused, for its failure to state that the determination of the jury should be based upon the evidence of the case.

(5) A majority of the court are of the opinion that charge 5 had a misleading tendency, in that the definition of confidential relations therein stated was of too general a character, and that, while the giving of such a charge might not constitute reversible error, yet for the reasons stated the trial court would not be reversed for its refusal.

We are inclined to the view that the other refused charges are argumentative or misleading, or give undue emphasis to the particular portion of the evidence. —*Council v. Mayhew,* 172 Ala. 295, 55 South. 314. We state no conclusion as to them, however, as we find no argument specifically addressed thereto.

For the error indicated, the judgment of the court below is reversed, and the cause remanded. All the Justices concur.