This is an appeal by Hubert S. Elliott and five of his siblings from judgment, based upon a jury verdict, in favor of Roscoe Lymon Elliott, proponent of the will of Myrtle Whitmire Elliott. The verdict upheld the validity of the will against the contest of Hubert S. Elliott and the other contestants.
The parties to this appeal comprise seven of the nine children of the testatrix Myrtle Whitmire Elliott. The contest was filed the probate court and transferred for trial to the circuit court pursuant to statute. The issues upon which the contest was tried were whether at the time of making and executing her will decedent was possessed of the requisite mental or testamentary capacity and whether her will was the product of the undue influence of her son, the proponent, Roscoe Lymon Elliott.
Contestants urge as error to reverse the refusal of twenty-six requested written jury instructions; the overruling of objections to questions propounded to witnesses by proponent; the sustaining of an objection of proponent to an answer of a witness to a question of contestants; the overruling of contestants' motion to set aside the verdict and for a new trial, and allowing affidavits in behalf of proponent to be filed at the hearing of the motion for new trial.
 A
Regarding the alleged error in the refusal of contestants' written requested jury instructions proponent correctly points out that this court may not consider whether refusing the instructions was error for the reason that contestants neither made objection nor assigned grounds for objection to the refusal of the trial court to give the instructions. Rule 51, ARCP states in pertinent part: *Page 848 
 "* * * No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. * * *"
Therefore, even assuming arguendo that one, or more, of the written requested instructions was erroneous and not substantially covered in the oral charge of the trial court, error may not be predicated thereon.
Appellants complain that the trial court did not inform counsel of its proposed action upon the requested charges before argument to the jury. Here again, we must point out that failure of the trial court to comply with this requirement of Rule 51 provoked no objection from appellants. From aught appearing the proposed action was indicated when the word "refused" was written on each of the requested charges. Appellants say they had no opportunity to object before the jury retired. No objection was made for any alleged denial of that opportunity. No error was preserved in connection with the trial court's actions concerning the jury instructions.
 B
Issue XXVII presented for review by appellants complains of error of the trial court when it allegedly permitted a witness to testify to a conclusion regarding the testamentary capacity of the testatrix contrary to the rule as expressed in Councillv. Mayhew, 172 Ala. 295, 55 So. 314. The matter arose when the following occurred:
 "Q. Okay. Now I will ask you if on June 17, 1971, if you have some opinion as to the mental capacity of Myrtle Whitmore Elliott?
"Mr. Keith: We object to that.
"The Court: Overruled.
"A. Yes, I do.
"Q. And in your judgment was she of sound mind?
 "A. She was absolutely of sound mind in my opinion."
It may be readily seen this was not the conclusionary testimony condemned in Councill. There, this court stated correctly:
 "It is well settled that, on the issue as to testamentary capacity, a witness, whether expert or not, cannot testify that the testator was or was not capable of making a will, because, as it is said, this is the very issue to be submitted to the jury. * * *"
No error resulted when the objection was overruled.
Appellants' issue XXVIII urges error in the trial court's sustaining proponent's objection to a witness' answer during the following proceedings:
 "Q. Now, in the late 60's or early 70's did you notice any change in her mental condition?
"A. Yes.
"Q. Will you explain that, please?
 "A. She would talk and stare off in the distance like she didn't know exactly where she was —
 MR. CHRISTIAN: We object to her testimony about where she thought she was and her mental —
"THE COURT: Sustained.
 "Q. All right. Now, I'll ask you if you noticed any changes in the late 60's or early 70's starting with what you observed, that which you observed?
 "A. She did sometimes stare off into the distance and then come back. She would start to make a statement, and then stare off.
 "Q. All right. Now, are you saying there would be long pauses?
 "A. Well, I would say there would be long pauses from the expression on her face.
"Q. Explain that to the jury as best you can?
 "A. On her face I could tell that she had just made a definite change in her mental capacity.
 "MR. CHRISTIAN: We object to her testifying about her mental capacity and making a definite change. *Page 849 
"THE COURT: Overruled." (Emphasis ours.)
Appellants contend that the objection came too late, there was no motion to exclude, and opinion evidence of mental capacity is improper ordinarily, but, in this instance, proper to rebut illegal evidence of mental capacity previously adduced by proponent. We cannot agree. In context, the series of questions and answers show that contestants were allowed to go into the mental capacity, or soundness of mind, of testatrix aside from any alleged error regarding the one question and answer. Viewed at its worst, the ruling did not affect the substantial rights of the parties. Rule 61, ARCP. Under the rules of review of this court it cannot be treated as injurious even if, indeed, it be error. Rule 45, ARAP.
In their issue XXIX appellants say it was reversible error for the trial court to overrule contestants' objection to the following question: "Well, assuming you were in there on either May, June or July, did you talk to her during that period of time?" The witness to whom this question was propounded had previously testified to ample facts upon which to predicate an opinion of the condition of the testatrix's mind. He testified to having either talked with testatrix in person or by phone on an average of no less than once a month during the year 1971; further, during that year, and several years before and after, rarely did he go for a period of three weeks without seeing her. The witness went on to detail his contacts and relationship with testatrix, concluding with the opinion that she was possessed of a sound mind. Contestants argue that Allenv. Jones, 259 Ala. 98, 65 So.2d 217, supports their contention that this testimony assumed the witness was at the home of testatrix at some period in time in May, June, or July (1971) and further assumed the witness talked to her. Moreover, they say, permitting the question to be answered in that context allowed the witness to make an observation as a non-expert, who did not attest the will, concerning the mental condition of the testatrix without an opportunity to form a judgment and without stating the facts upon which the observation is based. We do not agree. Unlike the situation in Allen, the testimony of the witness, who answered this question in this case, taken in its entirety, demonstrates not only that he stated ample facts upon which to predicate his opinion of the condition of testatrix's mind but also that it was reasonable to assume that he had been in her home in either May, June, or July.
 C
Appellants' issue XXX complains of the trial court's overruling of their motion to set aside the verdict and order a new trial. The argument in support of this alleged error is addressed to the verdict being contrary to the preponderance of the evidence. The argument is that the preponderance of the evidence shows the will to be the product of the undue influence exercised upon testatrix by her son Roscoe Lymon Elliott, appellee. We do not agree, the trial court did not, and neither did the jury. The presumption of correctness afforded the jury verdict is strengthened by the refusal of the trial court to grant the motion for new trial. S.S. Kresge Co.v. Ruby, 348 So.2d 481 (Ala. 1977).
 D
Appellants' issue XXXI urges that it was reversible error to permit appellee to file an affidavit, and unsworn written statements of jurors in rebuttal of affidavits of three of the contestants filed with the motion for new trial when appellee's filings came more than fifteen days after service of the motion, no extension of time was granted and no stipulation of the parties permitted the filings, all being contrary to the requirements of Rule 59 (c), ARCP.
The affidavits of three of the contestants were to the effect that they saw the attorney for proponent go into the jury room, where the jurors were present, holding a paper and returned from there without the paper. These affidavits were filed with the motion on 9 November 1977. On 13 December, the day on which the motion for new *Page 850 
trial was heard, attorney for proponent filed his affidavit denying the allegations in contestants' affidavits and further stating that on no occasion during the trial of this case, or at any time, had he ever entered the jury room of that particular courtroom. At the time his affidavit was filed, he filed unsworn statements of eleven of the jurors which denied the allegations of contestants' affidavits. Over objection, these were introduced and contestants took exception but made no motion for continuance nor assigned any grounds for the objection.
In their motion for new trial contestants state the ground under consideration here thusly:
 "11. For the Proponent's attorney during the trial of the case and while jurors were in the jury room went into the jury room with some paper or papers and returned to the Courtroom without them (See attached affidavits)."
We observe that even had the occurrence not been denied by the affidavit of the attorney for proponent, there is no allegation in the ground eleven of the motion to the effect that what took place was improper conduct evidencing a sinister design or that it had any effect on the minds or sentiments of the jurors. Neither do contestants' affidavits show such. The trial judge had a right to believe either the affidavits of contestants or that of proponent to be true. His choice is quite obvious. As it has often been stated:
 "On questions of this kind, we consider the ruling of the trial court as being presumptively correct and conclude that the court acted with its sound judicial discretion in not granting a new trial on the ground now under consideration. * * *" [No. 11] Hatcher v. Camp, 279 Ala. 475, 479, 187 So.2d 232, 235. See also, Alabama Power Co. v. Henderson, 342 So.2d 323, 326, 327 (Ala. 1976).
In light of the foregoing, error, if any, in permitting introduction of the unsworn statements was harmless and did not affect the substantial rights of contestants. Rule 61, ARCP. Also, it was error without injury. Rule 45, ARAP.
Lastly, contestants urge it was fatal to the verdict to permit introduction of the affidavit and statements in behalf of proponent at the hearing of the motion for new trial more than fifteen days after service of the motion, without extension by the court for good cause shown, and absent stipulation of the parties permitting the introduction of them. We do not agree.
Time limits contained in the California Code of Civil Procedure for filing affidavits and counter affidavits with respect to motions for new trial have been held not to be jurisdictional. Clemus v. Regents of University of Cal.,8 Cal.App.3d 1, 87 Cal.Rptr. 108 (1970). See also Daudel v. Wolf,30 S.D. 409, 138 N.W. 814 (1912) and State v. Streensland,56 S.D. 534, 229 N.W. 395, 397 (1930). We view the time requirements of Rule 59 (c) for filing affidavits and opposing (counter) affidavits as not jurisdictional. We deem the better view to be that relaxation of these requirements, in a given case, is addressed to the sound judicial discretion of the trial judge.
For the reasons assigned the judgment is due to be, and is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, FAULKNER, ALMON and EMBRY, JJ., concur.