ALMON, Justice.
Hazel Koonce, contestant below, appeals from a judgment for the proponents in a will contest. We affirm.
James Wilson Koonce was admitted to Lloyd Noland Hospital in Birmingham, Alabama, on October 18,1974, for treatment of his emphysema and heart trouble; he was released from the hospital eighteen days later. While confined to the hospital, James consulted with J. Clewis Trucks, an attorney, and requested Trucks to draft a will for him. Trucks complied with this request and, on October 22, 1974, James executed the will. This will left James’s entire estate to his two sisters, Edith K. White and Nannie Sue Mims.
Although at the time he executed his will he was not married, James married Hazel Thomas Koonce in April of 1976. When he died in September of 1978, Nannie and Edith, as the named co-executrixes of James’s will, filed the will for probate in the probate court of Jefferson County, Alabama, Bessemer Division. Hazel subsequently filed a will contest in the circuit court. As grounds for the contest, Hazel alleged (1) that James was of unsound mind and incompetent at the time he executed the will; (2) that the will was neither properly executed by James nor properly witnessed; and (3) that the will was procured through undue influence exercised by both Edith and Nannie. By way of amendment to her complaint, Hazel dropped the counts of improper witnessing and undue influence. Thus, the issues framed for trial focused upon whether James had the requisite capacity at the time he executed his will and, if so, whether he properly executed his will.
Upon the conclusion of the trial, the trial judge directed a verdict in favor of the proponents (Edith and Nannie) on the question of testamentary capacity, and the jury returned a finding that the will was the valid last will and testament of James Koonce. Hazel appeals, raising several issues.
Hazel argues that the trial judge erred by permitting Dr. A. K. Black, the physician who treated James for twenty years as well as when he was confined to the hospital, to testify as to his opinion of James’s competency on the day he executed his will. That testimony was brought out during cross examination of Dr. Black by the attorney for the proponent:
Q And I’m going to ask you this, Doctor. Are you telling this jury that this man was mentally incompetent on the 22nd day of October, 1974?
MR. FURNER: Judge, that calls for a mental conclusion.
MR. PADEN: This is their doctor.
MR. CHAMBLEE: Well, mental incompetence is not the test.
MR. FURNER: It’s a legal conclusion, Your Honor.
THE COURT: Sustained.
MR. PADEN: You mean we can’t ask their own witness, a physician, as to whether or not the man he was treating—
THE COURT: I’ll let him answer that.
MR. PADEN: Would you read the question?
(Requested portion of record read.)
A When I recorded this note on the morning of the 22nd, I had no reason to think he was incompetent mentally.
Q Is that your opinion this day also, concerning his condition on the 22nd day of October, 1974?
A I have no opinion different than what is recorded on the chart of this date.
Q Doctor, I’m going to ask you if based on your treatment of James Wilson Koonce for a period of approximately 20 years, is that correct, you treated him?
*944 A Right.
Q Based on your knowledge and treatment of him over that period of time, based on your knowledge and treatment of him from October 18th to October 22nd, 1974, based on the notes that you have there before you and what you have received, do you have an opinion as to whether or not James Wilson Koonce was mentally competent on October 22, 1974?
A From my notes—
Q No, sir; do you have an opinion?
A I have no opinion except what is in the notes.
Q And you told us what your notes indicated.
A Right.
Q And based on those notes, what is your opinion, Doctor?
A It is my opinion, on the morning of October 22, 1974, from my note, I had no reason at that time to think he was incompetent mentally.
Q You have nothing to change your mind as of this date?
A No, sir.
According to Hazel, the admission of this opinion-was in error because it invaded the province of the jury. We disagree.
In Councill v. Mayhew, 172 Ala. 295, 55 So. 314 (1911), the Court restated the well settled rule
that, on the issue as to testamentary capacity, a witness, whether expert or not, cannot testify that the testator was or was not capable of making a will, because, as it is said, this is the very issue to be submitted to the jury.
172 Ala. at 306, 55 So. at 317 (citations omitted).
In Elliott v. Elliott, 372 So. 2d 846 (Ala.1979), the contestant in a will contest cited the rule in Council} as grounds for finding reversible error in the admission of the following testimony:
Q Okay. Now I will ask you if on June 17,1971, if you have some opinion as to the mental capacity of Myrtle Whit-more Elliott?
Mr. Keith: We object to that.
The Court: Overruled.
A Yes, I do.
Q And in your judgment was she of sound mind?
A She was absolutely of sound mind in my opinion.
This Court found no reversible error because the testimony “was not the conclu-sionary testimony condemned in Councill.” 372 So.2d at 848.
The opinion evidence admitted in the present case falls within the rule of Elliott Dr. Black’s testimony was directed to James’s competency at the time he executed his will and not to the ultimate issue of testamentary capacity. Thus, there was no error in the admission of this opinion evidence.
Hazel also asserts that the trial judge erred by granting the proponents’ motion for directed verdict on the issue of testamentary capacity. We disagree.
The law presumes that every person of legal age has the capacity to make a will. Fletcher v. DeLoach, 360 So.2d 316 (Ala. 1978); Haghart v. Cooley, 278 Ala. 354, 178 So.2d 226 (1965). The burden of proving the lack of the requisite capacity is cast upon the party who contests the validity of a will. Fletcher v. DeLoach, supra; Dersis v. Dersis, 210 Ala. 308, 98 So. 27 (1923). In order to survive a motion for directed verdict in a will contest, the contestant must produce at least a scintilla of evidence in support of his or her claim. Bardin v. Jones, 371 So.2d 23 (Ala. 1977).
Dr. Black testified at trial that James was receiving various medications for his heart problems and emphysema as well as the anxiety which accompanied his shortness of breath. He further testified that, according to the notes he recorded during James’s hospital stay, on October 22nd James was “[improving; still quite weak; heart rate 112 and irregular.” On October 23rd, Dr. Black recorded that James was “[n]ot doing well; lethargic and not as clear mentally.” On cross examination Dr. Black testified that, based upon his notes, he had *945 no reason to think that James was mentally incompetent on October 22nd, the day James executed his will.
Hazel contends Dr. Black’s testimony raises a scintilla that James was incompetent on October 22nd. We cannot agree. Any scintilla that James may have lacked testamentary capacity on the 22nd simply because he was “not as clear mentally” on the 23rd would be based upon pure speculation. As this Court has stated, “[t]he scintilla rule is not satisfied by speculation.” Arrington v. Working Woman’s Home, 368 So.2d 851, 854 (Ala.1979). Because such speculation is insufficient to raise a scintilla that James lacked the requisite testamentary capacity at the time he executed.his will, it follows that the trial judge did not err in directing a verdict on that issue.
Finally, Hazel argues the trial judge erred to reversal by admitting over objection other testimony. We find no reversible error.
The two issues at trial were James’s capacity and whether he properly executed his will. The trial judge directed a verdict on the first issue, and the jury returned a verdict in favor of the proponents on the second issue. Hazel does not contend the jury verdict was erroneous. We have reviewed the alleged objectionable testimony and conclude that it in no way changes the fact that Hazel failed to raise a scintilla of proof that James was incompetent at the time he executed his will. We therefore cannot say that the admission of such testimony was reversible error.
For the foregoing reasons, the judgment below is due to be affirmed.
AFFIRMED.
TORBERT, C. J., and FAULKNER, EM-BRY and ADAMS, JJ., concur.